O'Hara, Appellant, *v.* Manley, Exr., et al.

Argued March 6, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

40

*W. L. Pace,* for appellant.

*M. J. Mulhall,* with him *John T. Mulhall,* for appellee.

Opinion by Parker, J., April 22, 1940:

The prime questions raised by this appeal are whether an executor may confess a judgment against the estate of his decedent and whether a judgment so entered and indexed, within one year after death, in the judgment index in the county where the decedent resided and where his real estate was situated, is sufficient to continue the lien of such judgment against the real estate "longer than one year after the decease of such debtor." In short, are the entry and indexing of a judgment confessed by the executor without more a sufficient compliance with §15 [a] of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by Act of June 7, 1919, P. L. 412 (20 PS §521). The questions were raised on a distribution of the proceeds of a sheriff's sale of the real estate of the decedent.

Patrick J. Manley died January 12, 1932, after making his will wherein he appointed his son, John P. Manley, his executor and devised his real estate to his wife, Catherine Manley, for life with remainder to that son. Decedent's widow died November, 1933. After the will was probated and letters were issued it was discovered that Patrick J. Manley had appropriated to his own use two U. S. Liberty Bonds which had been entrusted to him by the plaintiff. To avoid litigation and costs and expense to the estate and to protect plaintiff, the executor made and delivered to plaintiff a judgment note for $1,100 payable one day after date. Within one year after decedent's death plaintiff, on October 19, 1932, personally appeared before the prothonotary and caused judgment to be entered on the note and to be properly indexed in the judgment index.

John P. Manley by deed dated September 1, 1934,

recorded in Luzerne County on October 18, 1934, conveyed the real estate of decedent located in Luzerne County to Frank E. Manley. Some months later John P. Manley as sole devisee of the real estate obtained a rule to show cause why the judgment should not be stricken off or opened on the ground that he was without authority to execute a note with confession of judgment. After argument the rule was discharged by JONES, J.

On January 5, 1937, plaintiff issued a scire facias to revive the judgment entered October 19, 1932, naming John P. Manley and Catherine Manley, his wife, and Frank E. Manley as terre tenants. John P. Manley and Frank E. Manley filed affidavits of defense averring that the judgment was not a lien on the land formerly owned by decedent and Catherine Manley disavowed any interest in or connection with the land. The cause came to trial by jury before McLEAN, J., the court gave binding instructions against the executor and the terre tenants, John P. Manley and Frank E. Manley, and granted a non-suit as to Catherine Manley. Judgment was accordingly entered on the sci. fa.

Execution was then issued on the judgment and the real estate formerly the property of the decedent was sold by the sheriff. The sheriff awarded sufficient of the proceeds to pay the plaintiff's judgment in full and the balance to another valid judgment against decedent and the terre tenants in favor of First National Bank of Scranton and assigned to Cathryn Malinak Manley, wife of John P. Manley, on the day before the sheriff's sale was held. Exceptions were filed and the court by JONES, J. awarded the entire proceeds after payment of costs to the judgment of the First National Bank of Scranton, holding that the O'Hara judgment was not a lien on the real estate of decedent after one year as the plaintiff did not comply with §15 [a] of the Fiduciaries Act, thereby overruling the previous decision by McLEAN, J., from which no appeal was taken. Judge

JONES apparently overlooked the fact that if the O'Hara judgment was not a lien on the real estate the premises could not be sold on that judgment and that no execution had been issued on the judgment obtained by the bank. In any event, it would be necessary to reverse the order appealed from. But we are all of the opinion that there was a compliance with the provisions of the Fiduciaries Act and that the O'Hara judgment continued to be a lien on the real estate claimed by the terre tenants.

The executor had authority to confess a judgment as executor of the estate of Patrick J. Manley which would bind his real estate: *Strause v. Braunreuter,* 14 Pa. Superior Ct. 125, 132; *Bennett v. Fulmer,* 49 Pa. 155, 160; *Sleeper v. Hickey,* 26 Pa. Superior Ct. 59, 64. The principle was tersely stated by the Supreme Court in the Bennett case as follows: "Nobody can doubt but that an administrator can confess judgment, and it has been decided that he may waive inquisition: *Hunt v. Devling,* 8 Watts 403."

The case of *Woods v. Irwin,* 141 Pa. 278, 294, 21 A. 603, goes even farther and it was there held in an opinion by Mr. Justice MITCHELL not only that an executrix might confess judgment for a debt of her decedent and bind the estate but that where the claim was honest she was not under obligation to plead the statute of limitations and that she might even, in that case, confess a judgment and other creditors of decedent had no standing to challenge the action of the executrix except for fraud or collusion.

The plaintiff complied with §15 [a] of the Fiduciaries Act and consequently the judgment never ceased to be a valid judgment against the real estate of decedent and particularly against the land claimed by the terre tenants. This court ruled that question in principle in *Sleeper v. Hickey,* supra, as a reference to the facts involved there will demonstrate. That decision went much farther than we are required to go here.

There the decedent in her lifetime executed and delivered a note containing a power to confess a judgment. After her death notwithstanding the fact that the power terminated as a matter of law with her death, a judgment was confessed against her and properly indexed within five years of the death of the debtor. "The filing of the note in the prothonotary's office ...... within five years of the death of the maker of it, had the legal effect of continuing the lien of the debt evidenced by the note for the period of five years" in accord with the 24th section of the Act of February 24, 1834, P. L. 73.[1] The original note was filed as was done in the present case. It was held that the effect of this was to continue the lien of the debt until April 17, 1896. On January 2, 1894, a sci. fa. to revive the judgment issued and a terre tenant, then the owner of the land, confessed judgment in that proceeding. It was held that the judgment never lost its lien against decedent's real estate and took precedence over a mortgage given by the terre tenant and duly recorded. In that connection we said (p. 65) : "But when the note evidencing the debt is filed in the prothonotary's office, within the time prescribed by the Act of 1834, and the lien thus kept alive until the heir appears and confesses a judgment thereon, within the time when said note still remains a lien and after it has become due, we can see no reason, and know of no authority, requiring us to hold that the lien of the debt was lost

---

[1] It was provided by the 24th section of the Act of 1834 as follows: "No debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors or administrators, within the period of five years after his decease, or a copy or particular written statement of any bond, covenant, debt or demand, where the same is not payable within the said period of five years, shall be filed, within the said period of five years, in

because the heir was not compelled by adverse proceeding to come into court."

It not being questioned that there was an honest debt due by the decedent to the plaintiff, the authority of the executor to confess the judgment cannot be questioned. Since the executor might have been brought into court by an adverse proceeding and a judgment obtained against the estate, the executor could with the consent of the plaintiff accomplish the same purpose by coming voluntarily into court and confessing judgment. The Fiduciaries Act upon which the appellee principally relies provides that an action be brought and indexed in the judgment index within one year after the decease of the debtor. This is precisely what was done when a judgment was confessed by the executor and properly indexed. "Confession of judgment is the voluntary submission to the jurisdiction of the court, giving by consent, and without the service of process, what could otherwise only be obtained by summons and complaint and through formal proceedings. A person who confesses judgment submits to be sued in that form and manner. The confession of judgment is but one of the ways and processes, one manner, by which a person is sued": *First National Bank v. Garlinghouse,* 53 Barber (N. Y.) 615, 619.

"The record of the entry of a judgment by the prothonotary under a power contained in the instrument is a record of the court, and it has all the qualities of a judgment on a verdict": *Kostenbader v. Kuebler,* 199

---

the office of the prothonotary of the county where the real estate to be charged is situate, and then to be a lien only for the period of five years after the said bond, covenant, debt or demand, becomes due." The Fiduciaries Act provides that such a debt shall not remain a lien on real estate of decedent longer than one year after the decease of such debtor unless an action for the recovery thereof be brought and the action be indexed within that period against the decedent and his executor or administrator in the judgment index in the county in which the action is brought and the county in which the real estate is situated.

Pa. 246, 249, 48 A. 972. As was said by Chief Justice GIBSON in *Braddee v. Brownfield,* 4 Watts 474: "In contemplation of law, a judgment on warrant of attorney is as much an act of the court as if it were formally pronounced on *nil dicit,* or a *cognovit;* and till it is reversed or set aside, it has all the qualities and effect of a judgment on a verdict." Also see *Hageman v. Salisberry,* 74 Pa. 280, 284; *St. Bartholomew's Church v. Wood,* 61 Pa. 96, 101.

One further matter requires comment. "The rights of all creditors are fixed as they were at the death of the decedent. No one can obtain a preference over any or all the others by proceedings commenced subsequent to that event": *Strouse v. Lawrence,* 160 Pa. 421, 425, 28 A. 930. It follows that the plaintiff is entitled to pro rate with the owner of the judgment against the decedent in which the First National Bank of Scranton was legal plaintiff.

The order of the court below is reversed and the record is remitted to that court to the end that distribution may be made in harmony with this opinion.

## ORDER

AND NOW, May 6, 1940, the petition for reargument is refused, but the opinion filed April 22, 1940 is amended by adding to the last paragraph of the opinion before the order, the words "as to such amount, if any, as shall be found to be due on the latter judgment," so that the sentence will read: "It follows that the plaintiff is entitled to prorate with the owner of the judgment against the decedent in which the First National Bank of Scranton was legal plaintiff, as to such amount, if any, as shall be found to be due on the latter judgment."

BY THE COURT

WM. M. PARKER, J.