J-A05009-15

2015 PA Super 158

| DANIEL R. NEDUCSIN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SCOTT CAPLAN | |
| Appellant | No. 1116 EDA 2014 |

Appeal from the Order Entered February 25, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2012 No. 002706

BEFORE:  GANTMAN, P.J., SHOGAN, J., and ALLEN, J.

OPINION BY GANTMAN, P.J.:                    **FILED JULY 23, 2015**

Appellant, Scott Caplan, appeals from the order entered in the Philadelphia County Court of Common Pleas, following denial of Appellant's petition to strike and/or open a confessed judgment in favor of Appellee, Daniel R. Neducsin, in this breach of contract action.  We affirm

The relevant facts and procedural history of this case are as follows. In 1996, Appellant founded Sweat Gyms ("Sweat"), a chain of fitness centers.  To expand the chain, on July 21, 2010, Appellant obtained a loan and a $250,000.00 line of credit from Wells Fargo, which Appellee guaranteed.  On December 31, 2011, Appellant and Appellee executed a promissory note ("Bedrock Note"), which Appellant's attorney had previously reviewed.

By early 2012, Sweat was nearly bankrupt and needed debt

restructuring and a cash infusion to keep operating. Appellee worried he would be held responsible if Sweat defaulted on the Wells Fargo line of credit. Appellee blamed Sweat's "business practices" for the company's financial difficulties and offered to lend Appellant additional funds in exchange for Appellee's greater oversight of the business and for changes in the corporate governance.

On March 9, 2012, Appellant as "Maker" and other Sweat shareholders and entities entered into a new note with Appellee in exchange for $2,000,000.00 in additional funds. The relevant terms of the note were taken from the original Bedrock Note and gave Appellee the right to file a confessed judgment in the event of a default. The grounds for default included: (1) failure to make payment on the note when due; or (2) "If any certification, warranty, or representation made or hereafter made by Maker to [Appellee] should prove to be false, incorrect, incomplete or misleading in any material respect"; or (3) bankruptcy; insolvency proceedings against any party liable under the note; assignment for the benefit of creditors; appointment of a receiver, etc.; or (4) if Maker should obtain additional financing from another source, senior or junior, secured or unsecured. (***See*** Promissory Note, dated 3/9/12, at 2-3; R.R. at A.25—A.26.) Appellant expressly represented in the 3/9/12 note that he would use the proceeds of the note solely to pay the business' outstanding debts, and the funds "shall not be used for personal, family, household, or other business uses." (***See***

*id.* at 5; R.R. at A.28.)   As in the original Bedrock Note, the last paragraph

of the 3/9/12 note also stated:

> THIS NOTE CONTAINS A WARRANT OF ATTORNEY FOR CONFESSION OF JUDGMENT (SECTION 18) AND A WAIVER OF TRIAL BY JURY AND OF THE RIGHT TO INTERPOSE DEFENSES, COUNTERCLAIMS OR SETOFFS (SECTION 37). MAKER HEREBY KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY AND (ON THE ADVICE OF THE SEPARATE COUNSEL OF MAKERS) UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS MAKER HAS OR MAY HAVE TO TRIAL BY JURY AND THE RIGHT TO INTERPOSE ANY DEFENSE (EXCEPT THOSE BASED ON PAYMENT OR ERRORS IN COMPUTING THE BALANCE DUE), SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION UNDER THE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA AND EXPRESSLY AGREES AND CONSENTS TO PAYEE NEDUCSIN'S ENTERING JUDGMENT AGAINST ALL MAKERS HERETO PURSUANT TO THE TERMS HEREOF[.]

(*Id.* at 8-9; R.R. at A.31−A.32).   Appellant's signature appears directly

under this paragraph.

On the same day, Appellant signed a revised shareholders' agreement,

which stated no shareholder, including Appellant, could take funds from the

Corporation's bank accounts for personal use without unanimous consent of

all shareholders.  Several months after executing the 3/9/12 note, Appellant

unilaterally used the line of credit for certain undocumented transactions,

including a deposit into his personal bank account.   At two separate

shareholder meetings on July 24, 2012, and on August 21, 2012, Appellee

asked Appellant how much Appellant had drawn down on the line of credit,

and Appellant twice replied with inaccurate information, stating he had

drawn down only $50,000.00, when in fact the amount was actually $170,000.00.

On September 24, 2012, Appellee filed a confession of judgment against Appellant for $2,005,970.50, averring Appellant's misrepresentation regarding the draw-down on the line of credit triggered a default under the 3/9/12 note. After several agreed-upon extensions of time, on November 8, 2012, Appellant filed a petition to strike and/or open the confessed judgment. On June 4, 2013, the court denied Appellant's petition to strike but ordered discovery and briefs on Appellant's petition to open.

On January 29, 2014, the court initially granted the petition to open judgment, without conducting oral argument. Appellee asked the court to vacate its order and conduct oral argument. On January 31, 2014, the court vacated the January 29, 2014 order and conducted oral argument on February 6, 2014. The court denied Appellant's petition to open the confessed judgment on February 25, 2014.[1] Appellant timely filed a notice of appeal on March 26, 2014. The court did not order Appellant to file a concise statement per Pa.R.A.P. 1925(b), and Appellant filed none.

---

[1] Appellant filed a second petition to strike on March 10, 2014. On March 26, 2014, the court dismissed with prejudice Appellant's March 10, 2014 petition to strike, because the issue raised in the March 10, 2014 petition to strike was the same as the issue raised in the original petition to strike, the new petition was untimely, it sought unavailable relief, and nothing in the record indicated that the decision to deny the prior petition to strike should be revisited.

Appellant raises the following issues on appeal:

> WHETHER THE JUDGMENT ENTERED BY CONFESSION SHOULD HAVE BEEN STRICKEN WHERE THE PROMISSORY NOTE UPON WHICH JUDGMENT WAS BASED LACKS CLARITY AND PRECISION AND PRESENTS AMBIGUITIES WHICH SHOULD HAVE BEEN RESOLVED IN FAVOR OF [APPELLANT].
>
> WHETHER [APPELLANT] WAS ENTITLED TO A FULL EVIDENTIARY HEARING TO DETERMINE IF THE JUDGMENT ENTERED BY CONFESSION SHOULD HAVE BEEN STRICKEN DUE TO THE INABILITY OF APPELLEE, AS CREDITOR, TO MEET HIS BURDEN THAT THERE WAS A KNOWING, VOLUNTARY AND INTELLIGENT WAIVER OF [APPELLANT'S] PROCEDURAL DUE PROCESS RIGHT TO A HEARING BEFORE THE ENTRY OF JUDGMENT.
>
> WHETHER [APPELLANT] PRESENTED SUFFICIENT EVIDENCE OF A MERITORIOUS DEFENSE TO THE CLAIM OF MISREPRESENTATION…AND, IF SO, WHETHER IT WAS MATERIAL, PLUS WHERE THERE WAS NO DETRIMENTAL RELIANCE UPON ANY STATEMENTS AND NO MONETARY LOSS TO WARRANT A $2 MILLION JUDGMENT UPON A FULLY PERFORMING LOAN.
>
> WHETHER, NOTWITHSTANDING THE LACK OF AN EVIDENTIARY HEARING, THE RECORD WAS SUFFICIENT TO OPEN THE JUDGMENT BASED UPON A LACK OF A KNOWING, VOLUNTARY AND INTELLIGENT WAIVER OF THE RIGHTS WHERE THE NOTE WAS CUT AND PASTED FROM ANOTHER TRANSACTION AND FALSELY STATED IT WAS EXTENSIVELY REVIEWED BY COUNSEL BUT WAS ONLY PRESENTED MOMENTS BEFORE SIGNATURE AND REFERENCED PARAGRAPHS THAT DID NOT EXIST, SECURITY AGREEMENTS WHICH DID NOT EXIST AND GUARANTIES THAT DID NOT EXIST.

(Appellant's Brief at 4).

In his issues combined, Appellant initially argues the 3/9/12 note lacks the requisite precision to be enforceable and is internally inconsistent

because it is a "cut-and-paste job" from the Bedrock Note. Specifically, Appellant contends the default provisions of the 3/9/12 note are unclear and ambiguous, as strict construction of the terms suggests the default provisions only apply to Sweat, and not to Appellant; and the sections referred to in the last paragraph do not exist as numbered in the 3/9/12 note. Additionally, Appellant asserts he did not knowingly, voluntarily, and intelligently waive his rights to notice and hearing regarding the confession of judgment, because Appellee presented the 3/9/12 note to Appellant moments before signing and without time for Appellant to obtain counsel's review. Appellant insists he is entitled to an evidentiary hearing under the rules of court to determine if he knowingly, voluntarily, and intelligently waived his due process rights under the 3/9/12 note. Appellant submits the failure of the trial court to conduct an evidentiary hearing on Appellant's due process challenge constitutes an abuse of discretion.

Alternatively, Appellant wants to open the confessed judgment, claiming he has raised several meritorious defenses, including the "materiality" of the amount drawn down on the line of credit, Appellant's attempt to cure the default, and Appellee's decision not to confess judgment against the other shareholders. Appellant baldly states the record had a number of factual discrepancies, such as whether Appellee justifiably relied on Appellant's misrepresentation and whether the damages are potentially a penalty. Appellant complains a jury should hear those issues. Appellant

submits the discrepancy between the actual draw-down and the amount Appellant disclosed was insignificant in light of the overall debt. Appellant repeats his contention that the trial court's analysis does not reflect adequate consideration of whether Appellant properly waived his due process rights.

Appellant concludes this Court should reverse the trial court's decision and strike the judgment entered by confession; or remand the matter for a full evidentiary hearing to determine whether Appellant exercised a knowing, voluntary, and intelligent waiver of his procedural due process rights; or simply reverse the trial court's decision and open the judgment, based on the meritorious defenses raised in Appellant's petition to open the confessed judgment. We disagree.

Initially, we observe:

> "A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." **Resolution Trust Corp. v. Copley Qu–Wayne Associates**, 546 Pa. 98, 106, 683 A.2d 269, 273 (1996).

> In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, *i.e.,* the complaint and the documents which contain confession of judgment clauses. Matters *dehors* the record filed by the party in whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken…. An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.

- 7 -

*Hazer v. Zabala*, 26 A.3d 1166, 1169 (Pa.Super. 2011) (quoting *Resolution Trust Corp., supra*).  In other words, the petition to strike a confessed judgment must focus on any defects or irregularities appearing on the face of the record, as filed by the party in whose favor the warrant was given, which affect the validity of the judgment and entitle the petitioner to relief as a matter of law.  *ESB Bank v. McDade*, 2 A.3d 1236, 1239 (Pa.Super. 2010).  "[T]he record must be sufficient to sustain the judgment."  *Id.*  The original record that is subject to review in a motion to strike a confessed judgment consists of the complaint in confession of judgment and the attached exhibits.  *Resolution Trust Corp., supra* at 108, 683 A.2d at 274.

In contrast, "if the truth of the factual averments contained in [the complaint in confession of judgment and attached exhibits] are disputed, then the remedy is by proceeding to open the judgment," not to strike it.  *Id.* at 106, 683 A.2d at 273.  A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable.  *Hazer, supra*.  A petition to open a confessed judgment is an appeal to the equitable powers of the court.  *PNC Bank v. Kerr*, 802 A.2d 634, 638 (Pa.Super. 2002), *appeal denied,* 572 Pa. 735, 815 A.2d 634 (2002).  Factual disputes by definition cannot be raised or addressed in a petition to strike off a confession of judgment, because factual disputes force the court to rely on matters outside the relevant record to decide the merits of the petition. *Resolution Trust Corp., supra* at 109, 683 A.2d at 275.

Historically, Pennsylvania law has recognized and permitted entry of confessed judgments pursuant to the authority of a warrant of attorney contained in a written agreement.  *See Scott Factors, Inc. v. Hartley*, 425 Pa. 290, 228 A.2d 887 (1967).  "[A] warrant of attorney is a contractual agreement between the parties and the parties are free to determine the manner in which the warrant may be exercised."  *Atlantic Nat. Trust, LLC v. Stivala Investments, Inc.*, 922 A.2d 919, 924 (Pa.Super. 2007), *appeal denied*, 594 Pa. 702, 936 A.2d 39 (2007).  Entry of a valid judgment by confession must be "made in rigid

adherence to the provisions of the warrant of attorney; otherwise, such judgment will be stricken." ***Dollar Bank, Federal Sav. Bank v. Northwood Cheese Co., Inc.***, 637 A.2d 309, 311–12 ([Pa.Super.] 1994), *appeal denied*, 539 Pa. 692, 653 A.2d 1231 (1994). "A warrant to confess judgment must be explicit and will be strictly construed, with any ambiguities resolved against the party in whose favor the warrant is given." ***Id.*** "A warrant of attorney to confess judgment must be self-sustaining and to be self-sustaining the warrant must be in writing and signed by the person to be bound by it. The requisite signature must bear a direct relation to the warrant of attorney and may not be implied." ***Hazer, supra*** at 1171; ***See also Ferrick v. Bianchini***, 69 A.3d 642 [Pa.Super. 2013] (stating same).

***Midwest Financial Acceptance Corp. v. Lopez***, 78 A.3d 614, 622-23

(Pa.Super. 2013).

Rules 2950 to 2967 of the Pennsylvania Rules of Civil Procedure govern confessions of judgment for money. ***See generally*** Pa.R.C.P. 2950–2967. A confession of judgment "action" under these rules is distinctly defined as "a proceeding to enter a judgment by confession for money pursuant to an instrument…authorizing such confession." Pa.R.C.P. 2950. Rule 2952 expressly authorizes the practice of allowing a party to file a complaint in confession of judgment without either a notice to defend or a notice to plead, and no responsive pleading is required (even if the complaint has a notice to defend or is endorsed with a notice to plead). Pa.R.C.P. 2952(b). The rules requiring and establishing the form of notices to defend and to plead in ordinary civil complaints do not apply to actions for confession of judgment. ***See id.*** Note (stating Rule 1018.1 and Rule 1361 do not apply to complaint in confession of judgment). Instead, "A confession of judgment clause 'permits the creditor or its attorney simply to apply to the court for judgment against the debtor in default without requiring or permitting the debtor…' to respond at that juncture." ***Southwestern Pennsylvania Regional Council, Inc. v. Gentile***, 776 A.2d 276, 279 n. 3 (Pa.Super. 2001). Because the creditor is entitled to file the complaint and enter judgment against

the debtor without any appearance or response from the debtor, Pennsylvania's initial procedure for confessing judgments lacks "the hallmarks of an adversary proceeding" until the debtor files a petition to strike off or open the judgment. *See Newton v. First Union Nat. Bank*, 316 F.Supp.2d 225, 233–34 (E.D.Pa. 2004). Nevertheless, "[t]he record of the entry of a judgment by the prothonotary under a power contained in the instrument is a record of the court, and it has all the qualities of a judgment on a verdict." *O'Hara v. Manley*, 12 A.2d 820, 822 ([Pa.Super.] 1940).

Generally, notice and service of a confessed judgment to the debtor is contemporaneous with the entry of the judgment against the debtor. *See* Pa.R.C.P. 2956 Note (referring to Rule 236(a)(1)) requiring prothonotary to give written notice to defendants of entry of confessed judgment by ordinary mail together with all documents filed with prothonotary in support of confession of judgment. "The prothonotary shall note in the docket the giving of notice and, when a judgment by confession is entered, the mailing of the required notice and documents." Pa.R.C.P. 236(b).

Following a confession of judgment, the debtor can choose to litigate the judgment by filing a petition in compliance with Rule 2959. *See* Pa.R.C.P. 2959. The debtor must raise all grounds for relief (to strike off or open) in a single petition, which can be filed in the county where the judgment was originally entered or in any county where the judgment has been transferred. *Id.* A party waives all defenses and objections which are not included in the petition or answer. *See* Pa.R.C.P. 2959(c).

*Id.* at 625-26 (footnote omitted).

"[W]e review the order denying Appellant's petition to open the confessed judgment for an abuse of discretion." *PNC Bank, Nat. Ass'n v. Bluestream Technology, Inc.*, 14 A.3d 831, 835 (Pa.Super. 2010) (quoting *ESB Bank, supra*).

- 10 -

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). The trial court may open a confessed judgment "if the petitioner (1) acts promptly, (2) alleges a meritorious defense, **and** (3) can produce sufficient evidence to require submission of the case to a jury." *PNC Bank, Nat. Ass'n, supra* at 836 (emphasis added). Generally, the court will dispose of the rule on petition and answer, along with other discovery and admissions. Pa.R.C.P. 2959(e).

When determining if the petitioner acted promptly, "the courts are not bound by an inflexible time frame. The crucial factor in determining whether a petition is timely is not the specific time which has elapsed but rather the reasonableness of the explanation given for delay." *First Seneca Bank & Trust Co. v. Laurel Mountain Development Corp.*, 506 Pa. 439, 443, 485 A.2d 1086, 1088 (1984).

"A meritorious defense is one upon which relief could be afforded if proven at trial." *Ferrick, supra*, at 647.

Pa.R.Civ.P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment. Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while

- 11 -

> rejecting contrary evidence of the non-moving party. ***Continental Bank v. Axler***, 510 A.2d 726, 728 ([Pa.Super.] 1986); ***Pawco v. Bergman Knitting Mills, Inc.***, 424 A.2d 891, 897 ([Pa.Super.] 1981). The petitioner need not produce evidence proving that if the judgment is opened, the petitioner will prevail. ***Id.*** Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom. ***Federman v. Pozsonyi***, 529 A.2d 530, 533 ([Pa.Super.] 1987) [(citing ***Hamilton Bank v. Rulnick***, 475 A.2d 134, 137 ([Pa.Super.] 1984).

***Liazis v. Kosta, Inc.***, 618 A.2d 450, 453 (Pa.Super. 1992). In other words, a judgment of confession will be opened if "a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury." ***Foerst v. Rotkis***, 368 A.2d 805, 807-08 (Pa.Super. 1976). The standard of sufficiency here is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations. ***Greenwood v. Kadoich***, 357 A.2d 604, 606 (Pa.Super. 1976). The trial court can make this decision as a matter of law when the defense presented is without adequate substance, because contract construction and interpretation is generally a question of law for the court to decide. ***Profit Wize Marketing v. Wiest***, 812 A.2d 1270, 1274 (Pa.Super. 2002).

A contract's language is unambiguous if it can be determined without any other guide than knowledge of the simple facts on which its meaning depends. ***Id.*** When the contract is clear and unambiguous, the meaning of

the contract is ascertained from the writing alone. ***Kmart of Pennsylvania, L.P. v. MD Mall Associates, LLC***, 959 A.2d 939, 944 (Pa.Super. 2008), *appeal denied*, 602 Pa. 667, 980 A.2d 609 (2009). A court must not distort the meaning of the language or resort to a strained contrivance to find an ambiguity. ***Mitsock v. Erie Ins. Exchange***, 909 A.2d 828, 831 (Pa.Super. 2006). Additionally, a mere disagreement between the parties regarding the proper construction of the language does not render the contract ambiguous. ***Baney v. Eoute***, 784 A.2d 132, 136 (Pa.Super. 2001). In the context of a petition to open a confessed judgment, "[t]he function of our [C]ourt is not to [w]eigh the evidence in support of the defense, but merely to determine whether there was sufficient evidence to go to the jury." ***Foerst, supra***.

> "Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court." ***Riccio v. American Republic Ins. Co.***, 550 Pa. 254, 263, 705 A.2d 422, 426 (1997). The legal effect or enforceability of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard. ***Id. See also Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant***, 915 A.2d 647 (Pa.Super. 2006), *appeal denied*, 597 Pa. 720, 951 A.2d 1166 (2008). … Likewise, if the matter under review involves the interpretation of the Pennsylvania Rules of Civil Procedure, we have before us a question of law, where our standard of review is de novo and our scope of review is plenary. ***Boatin v. Miller***, 955 A.2d 424, 427 (Pa.Super. 2008).

***Midwest Financial Acceptance Corp., supra*** at 624.

In the present case, Appellant founded Sweat Gyms in 1996, a chain

of fitness centers. To expand the chain, Appellant obtained a loan and a $250,000.00 line of credit from Wells Fargo on July 21, 2010, which Appellee guaranteed. On December 31, 2011, Appellant and Appellee executed the Bedrock Note, which Appellant's attorney had reviewed. By early 2012, Sweat was almost bankrupt and needed debt restructuring and a cash infusion to continue operating. Appellee blamed the company's "business practices" for its financial difficulties and offered to lend additional funds in exchange for Appellee's greater oversight of the business and for changes in the corporate governance.

On March 9, 2012, Appellant as "Maker" and other Sweat shareholders and entities entered into a new note with Appellee in exchange for $2,000,000.00 of additional funds. The relevant terms of the 3/9/12 note were taken from the original Bedrock Note, which gave Appellee a warrant to confess judgment in the event of a default. The express grounds for default included: (1) failure to make payment on the note when due; or (2) "If any certification, warranty, or representation made or hereafter made by Maker to [Appellee] should prove to be false, incorrect, incomplete or misleading in any material respect"; or (3) bankruptcy; insolvency proceedings against any party liable under the note; assignment for the benefit of creditors; appointment of a receiver, etc.; or (4) if Maker should obtain additional financing from another source, senior or junior, secured or unsecured. (**See** Promissory Note, dated 3/9/12, at 2-3; R.R. at A.25—A.26).

On the same day, Appellant signed a revised shareholders' agreement, which stated no shareholder could take funds from the Corporation's bank accounts for personal use without unanimous consent of all shareholders. Several months after executing the 3/9/12 note, Appellant unilaterally used the line of credit for certain undocumented transactions, including a deposit into his personal bank account. Appellee asked Appellant twice about the amount Appellant had drawn down on the line of credit. Appellant twice replied with inaccurate information that the draw-down was in the amount of $50,000.00. Based on the discovery that the draw-down was actually $170,000.00, Appellee asserted Appellant's misstatements and this discrepancy constituted a default under the 3/9/12 note.

Appellee filed a complaint in confession of judgment against Appellant for $2,005,970.50 on September 24, 2012.[2] Appellant filed a petition to open or strike the confessed judgment on November 8, 2012, after several agreed-upon extensions of time. By order of June 4, 2013, the court denied Appellant's petition to strike but ordered discovery and briefs on Appellant's petition to open. The court conducted oral argument on February 6, 2014, and denied Appellant's petition to open the confessed judgment on February

_____

[2] Appellant does not raise any issue in his appeal regarding compliance with the applicable rules for confessed judgments. Nonetheless we observe that Appellee's complaint in confession of judgment fully complied with Pa.R.C.P. 2952 by including the required averments, a demand for judgment, a signature and verification in accordance with the rules relating to civil actions; and no notice to plead or defend. *See* Pa.R.C.P. 2952.

25, 2014.

We begin our analysis by recognizing that the claims Appellant raised in his petition to strike (relating to the ambiguity and precision of the 3/9/12 note, or the absence of a knowing, voluntary, and intelligent waiver of his rights to notice and hearing regarding the confession of judgment) were inappropriate grounds to strike the confessed judgment. The confession of judgment provision at issue in the 3/9/12 note was in writing and placed within the note, prominently on its own page in all capital letters. (*See* Promissory Note, dated 3/9/12, at 4; R.R. at A.27.) The last paragraph of the 3/9/12 note expressly states, in capital letters, that the note contains a warrant of attorney for confession of judgment as well as a waiver of a trial by jury and a waiver of the right to interpose defenses, counterclaims or setoffs; this paragraph also states that the "Maker" (Appellant) knowingly, intentionally, and voluntary waives these rights. Appellant's signature appears directly below this paragraph. (*See* Promissory Note, dated 3/9/12, at 8-9; R.R. at A.31—A.32.)

By virtue of the confession of judgment/warrant of attorney provisions in the 3/9/12 note, Appellant irrevocably authorized and empowered any attorney or the prothonotary of any court in the United States, or elsewhere, to appear at any time for Appellant, pursuant to the terms of the note, and with or without complaint filed, as of any term, confess or enter judgment against Appellant. We conclude the confession of judgment and the warrant

of attorney provisions were valid, self-sustaining, explicit, and unambiguously without limit, except as required under the terms of the note. *See Midwest Financial Acceptance Corp., supra*. Therefore, the trial court had no reason to strike the confession of judgment or revisit the court's June 4, 2013 order denying the petition to strike. (*See* Trial Court Opinion, filed February 25, 2014, at 2.)

Appellant's complaint, that he unknowingly, involuntarily, and unintelligently signed the waiver, is actually an argument for opening a confessed judgment. In response to Appellant's petition to open the confessed judgment, the trial court reasoned as follows:

> [Appellant] raises a number of unpersuasive grounds for opening the judgment. None of them rise to the level of a meritorious defense. The fact that [Appellee] chose to act only against [Appellant] and not the other shareholders is not significant in light of the facts. [Appellant's] claim that he tried to cure the default does not negate the default. [Appellant's] claim that he…had "always" taken these loans in the past is not significant. It is clear that [Appellee] tailored the default provisions in the [3/9/12 note] to prevent this practice. Claiming that [Appellee] had independent access to [Sweat's] financial information does not negate the fact that [Appellant] misrepresented crucial facts on two occasions.
>
> Similarly, [Appellant] argues that the misstatement was not material because the business owed approximately four and a half million in total. This is not a defense. The question was directed to the topic of the line of credit, the line of credit was vital to the continued operation of the business, and its reduction by more than two-thirds was alarming and material.
>
> [Appellant] also argues that he was denied due process because he was force[d] to sign the [3/9/12 note] and

revised Shareholders Agreement under threat of loss of the monetary infusion that [Appellee] was offering. This does not constitute a due process violation. In any case, the choice between securing financing under unpleasant terms and insolvency is a perennial dilemma for small businesses that need to borrow to stay open. [Appellant] does not claim that he asked for time to review the agreement with counsel and was denied permission to do so. Nor does he assert that he took the agreement subsequently to counsel to learn of his rights and obligations.

[Appellant's] other position, an attempt to convert [Appellant] from a [M]aker (*i.e.* borrower) into a guarantor or accommodation party, is ludicrous. If [Appellant] were a guarantor, he would not have needed to borrow from [Appellee]. It was always [Appellee's] funds which were at risk, and [Appellee] had to answer to Wells Fargo.

[Appellant] either never read, or never took seriously, the instruments which worked a substantial limitation on his ability to treat the Sweat Funds as his own. While the [3/9/12 note] in question is not a masterpiece of clarity, the terms of default are clearly set out. [Appellant] is clearly described as a Maker, not a guarantor. The other documents make it crystal clear that shareholders were no longer allowed to take undocumented personal loans from the business.

There having been no showing of a meritorious defense, the Petition to Open is denied, and the discovery motions are denied as Moot.

(Trial Court Opinion at 3-4). We accept the court's analysis. As further commentary, we recognize the relevant portions of the 3/9/12 note were taken directly from the Bedrock Note, which Appellant's counsel had reviewed and Appellant had signed. Additionally, Appellee (not Appellant) was the guarantor of the line of credit and could be held responsible for the money owed. The record makes clear Appellant gave Appellee the power to

confess judgment on specified grounds of default. Appellant twice defaulted by providing false information to Appellee about the amount of money Appellant drew down on the line of credit. At one if not both shareholder meetings, Appellant disclosed that he drew down only $50,000.00 on the line of credit, which he claimed he used for the business. In fact, Appellant had really drawn down $170,000.00 on the line of credit and utilized $85,000.00 of it for personal use. Appellant's representation to Appellee regarding the total amount of money drawn down on the credit line was incorrect and misleading in a material respect because the $170,000.00 draw-down was a substantial portion of the $250,000.00 line of credit.

Further, the 3/9/12 note does not include any "cure" conditions. We observe that Appellant's belated and incomplete attempts to replenish the line of credit for his personal draw occurred after Appellee had declared default and confessed judgment. Appellant essentially admitted he took money from the corporate line of credit for personal use, without unanimous consent of the shareholders, and misrepresented the amount he took. In light of Appellant's false statements and his admissions, Appellant was in default of the 3/9/12 note as a matter of law. Upon Appellant's default, the 3/9/12 note allowed Appellee to "declare the entire unpaid principal balance together with interest accrued thereon and all other sums due or owed by [Appellant] hereunder…to be due and payable immediately…." (*Id.* at 3; R.R. at A.26). Appellant failed to support any of the "meritorious" defenses

he alleged. ***See PNC Bank, Nat. Ass'n, supra***. Therefore, the court had no need to conduct an evidentiary hearing on Appellant's petition to open the confessed judgment.

Based upon the foregoing, Appellant's claims raised no defect on the face of the record to strike the confessed judgment. Given Appellant's misstatements and admissions, he was in default of the parties' agreements, and without adequate meritorious defenses. Accordingly we hold the trial court properly denied Appellant relief on the grounds asserted, and we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2015