J.A30040/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PARKE BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RHOADS AVENUE | : | |
| NEWTOWN SQUARE, LP, | : | |
| | : | |
| Appellant | : | No. 601 EDA 2015 |

Appeal from the Order Entered February 9, 2015
In the Court of Common Pleas of Delaware County
Civil Division No(s): 2013-007506

BEFORE: MUNDY, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED JANUARY 12, 2016**

Defendant/Appellant, Rhoads Avenue Newtown Square, LP, appeals from the order entered in the Delaware County Court of Common Pleas granting the petition of plaintiff/Appellee, Parke Bank ("Bank"), to strike with prejudice Appellant's petition to open or strike Bank's confessed judgment. Appellant argues the court erred in finding George Spaeder had authority to accept service of the confessed judgment and thus the time for challenging the confessed judgment had tolled.  We affirm.

We glean the following facts from Bank's complaint in confession of judgment and the trial court opinion.  George "Spaeder owned, controlled, and managed" both Appellant and North Charlotte Road Pottstown, LP

_____
[*] Former Justice specially assigned to the Superior Court.

("North Charlotte"). Trial Ct. 5/11/15, at 1. On March 6, 2008, Bank entered in a construction loan agreement ("Loan") for $8 million with North Charlotte as borrower. Appellee's Compl. in Confession of J., 7/30/13, at ¶ 3. On October 5, 2011, Bank and North Charlotte executed a loan modification and extension agreement ("Guaranty Agreement"), which stated "[t]he original collateral for the Loan has depreciated in value, such that, in order to permit the extension of the Loan . . . Bank is requiring additional collateral," including "[t]he guarantee[ ] of" Appellant. Loan Modification & Extension Agmt., 10/25/11, at ¶ 3. Spaeder signed the Guaranty Agreement as manager of North Charlotte.

"North Charlotte defaulted on the Loan. On December 14, 2012, the Bank confessed judgment against North Charlotte [for] $9,762,357.86." Trial Ct. Op. at 2 (citation omitted). North Charlotte filed a petition to strike or open the confessed judgment, and in testifying in that matter, "Spaeder conceded that the Loan . . . was in default." **Id.**

On July 30, 2013, Bank filed the underlying complaint in confession of judgment against Appellant as guarantor of the Loan to North Charlotte, in the amount of $10,430,209.25. On August 7, 2013, the Delaware County sheriff's office served notice of Bank's confessed judgment on Spaeder. One year and three months thereafter, on November 10, 2014, Appellant filed a petition to open or strike the confessed judgment, which argued, *inter alia*: (1) the petition was timely filed because Spaeder had no authority to receive

service on behalf of Appellant; and (2) the Guaranty Agreement was void and unenforceable because Bank obtained it through fraud. Bank filed a motion to strike Appellant's petition, Appellant filed a response, and the court heard oral argument on February 9, 2015.

On the same day, the court entered the instant order granting Bank's motion to strike with prejudice Appellant's petition to strike or open confessed judgment. It reasoned:

> [F]or many years during the various civil actions filed, Spaeder repeatedly claimed that he is and always has been an owner, partner, member and manager of [Appellant], including at the time of service. [Spaeder signed the Guaranty Agreement on behalf of Appellant.]
>
> By his own actions in related civil actions, Spaeder was the proper entity for the Bank to serve notice of the entry of the confessed judgment. In [a] related matter filed in the Delaware County Court of Common Pleas, [*Earle v. Spaeder*], No. 12-6409, Spaeder filed a Response . . . on July 27, 2012. Throughout this pleading[ ], Spaeder averred that "[he] is a partner in the Entities and also in the Manager of the limited partnership Entities." Spaeder defined the "Entities" to include [Appellant].
>
> In another related civil action filed in the Delaware County Court of Common Pleas, *Parke Bank v. Main Street Peckville, LP*, No. 12-10303, Spaeder filed a Petition to Intervene on March 13, 2013. [This petition] alleged that he was the sole member of [Appellant's] co-general partner[ ] and therefore, cannot be excluded from the litigation. In addition, Spaeder alleged that Earle had no authority to act independently of the co-general partners of the limited partnerships, of which Spaeder was the sole member, including [Appellant].
>
> In April 2013, Spaeder filed a Civil Action in the Delaware County Court of Common Pleas, [ ] *Spaeder v. Rosedon Holding Co., L.P., Bruce Earle, and Margaret*

*Earle*, No. 12-6399, wherein he alleged that he held a 50% interest of [Appellant]. In the complaint, Spaeder allege[d] he was the day-to-day manager of the entities and was responsible for their management, including [Appellant]. Based upon his own averments in these various civil actions, it is clear that Spaeder is and was an owner, partner, and manager of [Appellant,] and therefore, the Bank properly and logically served Spaeder, on behalf of [Appellant], as to the confessed judgment.

Trial Ct. Op. at 5-6 (citations omitted).

The trial court also rejected Appellant's argument that an "Operating Agreement" and a court "Order issued by Judge Green in *Earle v. Spaeder*, . . . No. 12-4609"—both dated August 16, 2012—"prevented him from having authority to accept service of the notice of the entry of the confessed judgment in this matter." *Id.* at 6. The court stated:

In the Operating Agreement, the parties agreed to allow a neutral, John McGary, to provide oversight regarding the business operations of the Spaeder-Earle entities because there were mutual allegations of misappropriation of the entities' funds.

Spaeder argues that the following language in the Operating Agreement and the appointment of the neutral removed him as [Appellant's] owner[:] "Rosedon, subject to the supervision of the Neutral, will serve as the sole interface between the Entities and any third parties." This argument fails for several reasons. When Spaeder signed the Operating Agreement, he still "disputed who has the right to ownership and control of the Entities" and reserved his position that he was an owner of [Appellant]. When he signed the Operating Agreement, Spaeder never gave up his ownership rights of [Appellant] and his right to pursue money he believed that Earle owed him. Judge Green's August 12, 201[2 order] never divested Spaeder as an owner of [Appellant].

Upon review, the Operating Agreement's purpose was

- 4 -

to appoint a Neutral to oversee and ensure that no further monies from [Appellant] were being misappropriated. Furthermore, the Bank was not a party to the Operating Agreement or to the *Earle v. Spaeder* Action[,] and therefore, was not bound by the Operating Agreement's terms. . . .

[Furthermore, o]ne month after the entry of the confessed judgment, Spaeder won his Civil Action in . . . [*Spaeder*] *v. Rosedon Holding Co., L.P., Bruce Earle and Margaret Earle*, No. 12-6399, where he obtained full ownership of [Appellant]. Yet, Spaeder and [Appellant] allowed time to pass without filing anything regarding the entry of the Confessed Judgment [in the instant case].

*Id.* at 6-8 (citations omitted).

The court concluded Appellant's "waiting 430 days to address the entry of the Confessed Judgment was not acceptable and that the reason for the delay, the alleged improper service[,] did not have merit." *Id.* at 8. The court also found "Bank properly obtained a confessed judgment[ ] and therefore, was prejudiced by the extreme delay by [Appellant] by having to wait such a long time to execute that judgment." *Id.*

Appellant filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

For ease in reviewing Appellant's arguments on appeal, we first summarize the following averments made elsewhere in its brief.

Beginning in 2003, . . . Spaeder began a partnership with a man named Bruce Earle to buy, sell, and renovate real estate. . . . Spaeder and Earle began working with . . . Bank in early 2007, eventually borrowing tens of millions of dollars from . . . Bank through various entities they

controlled. . . .

Appellant's Brief at 3-4. Appellant's "First Amended and Restated Partnership Agreement," dated December 22, 2011, provided that it had one general partner and two limited partners. The general partner was Rhoads Avenue Newtown Square GP, LLC,[1] whose sole member was Earle and the president was Spaeder. "By late 2011, however, the Spaeder-Earle relationship had begun to deteriorate and their long-standing business partnership had begun to collapse." *Id.* at 4.

> This culminated in a number of lawsuits, including ***Earle v. Spaeder***, C.C.P., Delaware County, No. 12-6409, relating to Earle's and Spaeder's various rights and obligations vis-à-vis [Appellant] and the numerous other entities they owned and operated[.] In the course of ***Earle v. Spaeder***, the [court] entered Orders and a concomitant Operating Agreement that put Earle's entity, Rosedon Holding Company ("Rosedon"), in exclusive charge of [Appellant].

*Id.* at 5. "Thus, as of September 11, 2012 (at the very latest), Spaeder lacked the power to serve as an 'interface or point-of-contact between' [Appellant] 'and all third parties.' Rosedon, owned and controlled solely by . . . Earle, was alone permitted to act in that capacity." *Id.* at 6.

Appellant raises two issues for our review, which we address together. First, it reiterates that at the time of service of Bank's complaint in August of 2013, Spaeder could not accept service pursuant to Pennsylvania Rule of

---

[1] We note the name of this entity is similar to Appellant's name, Rhoads Avenue Newtown Square, LP.

Civil Procedure 423, as he was not one of Appellant's partners, members, officers, or registered agents. In support, Appellant contends the following. Although Spaeder "managed [its] activities" "[p]rior to [his] discord" with Earle, "Earle thereafter kicked him out, leading to the lawsuits and Operating Agreement[.]" Appellant's Brief at 19. In August of 2012, Earle had sworn that "Spaeder no longer had authority to act on behalf of [Appellant], that Earle had 'removed . . . Spaeder from any and all positions' at [Appellant], and that Earle, 'through . . . counsel, advised [Bank]' of this fact." *Id.* "After September 2012, . . . Spaeder was, by order of court, entirely powerless to be 'in charge of any [of its] regular place of business or activity[.']" *Id.* Instead, "only Earle could operate the company" and, "through Rosedon (his company), could act as an 'interface or point-of-contact between' [Appellant] and 'third parties.'" *Id.* By "eventual settlement[,] Spaeder and his wife became majority owners of [Appellant] in September 2013." *Id.*

Appellant's second argument on appeal is that the court erred in relying "heavily on averments in court filings below by Spaeder's attorneys [in other cases] that Spaeder was 'an owner, partner, and manager of'" Appellant. These arguments, Appellant maintains, were merely "rhetoric" and "did not alter the state of fact [that Spaeder was not] a partner, member, officer, registered agent, or authorized agent for service of

[Appellant] at that time."[2] *Id.* at 21, 22. Appellant avers the court further erred by ignoring "Bank's own statements in [other] court filings." *Id.* at 22. Specifically, it states, in May 2013, "less than three months before [Bank] served Spaeder in this action—in one of the very cases referenced by the trial court," Bank stated: (1) Spaeder "ha[s] absolutely **no** right to participate in the management of [Appellant], [and] shall have no control over [its] business or assets and shall have no right or authority to act for or obligate" Appellant; and (2) "Earle through entities he owns and controls has exclusive authority to manage" Appellant. *Id.* at 21-22. We find no relief is due.

This Court has stated: "A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." *Neducsin v. Caplan*, 121 A.3d 498, 504 (Pa. Super. 2015) (citation omitted). A "petition to strike a confessed judgment must focus on any defects or irregularities appearing on the face of the record, as filed by the party in whose favor the warrant was given, which affect the validity of the judgment and entitle the petitioner to relief as a matter of law." *Id.* (citation omitted). "In contrast, 'if the truth of the

---

[2] The sole legal authority cited in Appellant's brief is Rule 423 and the statement, "[A]ttorneys' arguments [a]re not evidence, but argument." *See* Appellant's Brief at 18, 21 (citing *Commonwealth v. Carson*, 913 A.2d 220, 269 (Pa. 2006)).

factual averments contained in [the complaint in confession of judgment and attached exhibits] are disputed, then the remedy is by proceeding to open the judgment,' not to strike it. . . . A petition to open a confessed judgment is an appeal to the equitable powers of the court." *Id.* (citations omitted). "[W]e review the order denying Appellant's petition to open the confessed judgment for an abuse of discretion." *Id.* at 506 (citation omitted).

Pennsylvania Rule of Civil Procedure 2959(a)(3) sets forth the time period for filing a petition to strike or open confessed judgment:

> If written notice [of execution upon a confessed judgment] is served upon the petitioner pursuant to Rule 2956.1(c)(2) or Rule 2973.1(c), the petition shall be filed within thirty days after such service. Unless the defendant can demonstrate compelling reasons for the delay, a petition not timely filed shall be denied.

Pa.R.C.P. 2959(a)(3). The comment to the rule states, "After thirty days, the defendant is barred from relief unless there are 'compelling reasons for the delay.'" Pa.R.C.P. 2959, *cmt*.

As stated above, Appellant challenges Bank's service under Rule 423. That rule states:

> **Rule 423. Partnerships and Unincorporated Associations**
>
> Service of original process upon a partnership and all partners named in the action or upon an unincorporated association shall be made upon any of the following persons provided the person served is not a plaintiff in the action:
>
> (1) any partner, officer or registered agent of the partnership or association, or

(2) an agent authorized by the partnership or association in writing to receive service of process for it, or

(3) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the partnership or association.

Pa.R.C.P. 423(1)-(3).

As stated above, Appellant cites an "Operating Agreement" executed in the related matter, ***Earle v. Spaeder***, as divesting Spaeder of any ownership, membership, and officer position in Appellant. We review that document, which was attached as the fourteenth exhibit to Appellant's petition to open or strike the confessed judgment.

The first paragraph of the Operating Agreement stated the parties in that matter, including Spaeder and Earle, "have mutually agreed that John McGary of Marcum LLP (the 'Neutral') shall serve as the 'Neutral'" required by the court's August 3, 2012 stipulated order. Operating Agmt., 9/10/12, at 1, ***Earle v. Spaeder***, No. 12-6409, Delaware Co. C.C.P. The agreement then stated:

Whereas, pursuant to the Stipulated Order, the Neutral shall oversee the day to day business operations of Rosedon Holding Company, LP ("Rosedon") and the entities listed in Exhibit "A," [which included Appellant] until further order of the Court;

Whereas, the business operations subject to the oversight of the Neutral shall not include the acquisition, sale, transfer, or other disposition of any assets of the Entities, and such transactions shall be subject to the review of the Court during the pendency of the Stipulated

Order[;]

\*    \*    \*

Whereas, pursuant to an Order entered by the Court on August 16, 2012, Rosedon, subject to the oversight of the Neutral, shall serve as the sole interface or point-of-contact between the Entities and all third parties, including without limitation, creditors, financing entities and investors.

**Whereas, the Earles and Spaeder dispute who has the right to ownership and control of the Entities.**

Now, therefore, pursuant to the Stipulated Order, the Earles, the Entities, [Spaeder and defendants], and the Neutral enter into this Operating Agreement . . . to set forth the services to be provided by the Neutral . . . .

*Id.* at 1-2 (emphasis added).

The Operating Agreement further stated the following. The Neutral "shall oversee the collection, receipt, deposit, management, disbursement, and accounting" of the Entities' day to day cash accounting. *Id.* at 4. "Each week . . . the Parties shall meet and prepare a schedule of Expected Cash Events ('ECE') for the week, including both cash disbursements and cash receipts" and "shall agree to the EeE [sic] for the current week and update the prior EeE [sic] for the actual cash events that were agreed to and transacted[.]" *Id.* "During the week, the Neutral will monitor cash receipts and control the issuance of checks and/or wire transfers for bona fide expenses of the Entities that were approved at the prior Cash Meeting." *Id.* at 5. "The Parties, subject to the supervision of the Neutral, may authorize disbursements of cash for development activities only if the development

activities will protect or secure imminent net positive cash flow." *Id.* at 7. Spaeder was one of the signatories on this agreement.

On appeal, as it did before the trial court, Appellant emphasizes the paragraph which stated "the Neutral[ ] shall serve as the sole interface or point-of-contact between the Entities and all third parties, including without limitation, creditors[.]" *See id.* at 1. However, Appellant does not address the trial court's reasoning that the purpose of the Operating Agreement was merely "to appoint a Neutral to oversee and ensure that no further monies from [Appellant] were being misappropriated." *See* Trial Ct. Op. at 7. Appellant further ignores the Agreement's: (1) requirement that the parties, including Spaeder, prepare weekly schedules of the "day to day cash management, control and accounting" of the Entities; (2) preclusion of the Neutral from issuing checks and wire transfers that were not "approved at the prior Cash Meeting;" and (3) provision that the parties, subject to the Neutral's supervision, may authorize cash disbursements "for development activities." *See* Operating Agmt. at 4-5. Furthermore, in arguing the Operating Agreement effected removal of Spaeder from any official position in Appellant, Appellant wholly overlooks the parties' acknowledgment that "the Earles and Spaeder [currently] dispute who has the right to ownership and control of the Entities." *See id.* at 1.

In light of the foregoing, we disagree with Appellant's argument that at the time service of Bank's confessed judgment was made, Spaeder was not

a member, officer, or manager of Appellant under Rule 423. We thus do not disturb the trial court's finding that service on Spaeder was proper. *See Neducsin*, 121 A.3d at 506.

We now consider whether Appellant "demonstrate[d] compelling reasons for the delay" in filing its petition to strike or open confessed judgment. *See* Pa.R.C.P. 2959(a)(3) & *cmt*; *M & P Mgmt., L.P.*, 937 A.2d at 401. In its appellate brief, Appellant avers that "after September 30, 2013, Spaeder could again act on behalf of" Appellant. Appellant's Brief at 7. Appellant, however, does not dispute or address the trial court's observation that after Spaeder won the civil action against Earle and "obtained full ownership of" Appellant, he and Appellant failed to respond to Bank's confessed judgment for thirteen months. *See* Trial Ct. Op. at 8. We thus find Appellant does not present any compelling reason to overcome the trial court's finding that its petition to open or strike was untimely. We affirm the order of the court granting Bank's petition to strike with prejudice Appellant's petition to open or strike Bank's confessed judgment.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2016

- 13 -