J-S35010-22; J-S35016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRUIST BANK, FORMERLY KNOWN AS BRANCH BANKING AND TRUST COMPANY, SUCCESSOR-BY-MERGER TO SUSQUEHANNA BANK | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| PENNSYLVANIA MUSCLE BONE AND JOINT LLC | : : : : | No. 565 MDA 2022 |
| Appellant | : | |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): J-4065-2021

| | | |
|---|---|---|
| TRUIST BANK, FORMERLY KNOWN AS BRANCH BANKING AND TRUST COMPANY, SUCCESSOR BY MERGER TO SUSQUEHANNA BANK | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| DANIEL J. D'ARCO | : : : | No. 588 MDA 2022 |
| Appellant | : | |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): J-4066-2021

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:            **FILED JANUARY 24, 2023**

---

[*] Former Justice specially assigned to the Superior Court.

Daniel J. D'Arco and the Pennsylvania Muscle Bone and Joint LLC (the "Medical Practice") appeal from the orders denying their petitions to strike and/or open confessed judgments against them. The confessed judgments were entered by Truist Bank, formerly known as Branch Banking and Trust Company, Successor by Merger to Susquehanna Bank ("Truist"). D'Arco and the Medical Practice argue Truist's violation of the Equal Credit Opportunity Act ("ECOA")[1] was a meritorious defense, the confession of judgment clauses were not self-sustaining, and Truist failed to return Payment Protection Program ("PPP") money. We affirm.

The trial court summarized the factual and procedural background as follows:

> [D'Arco] operates, and is the sole member of, the Medical Practice. On January 7, 2009, the Medical Practice executed a Promissory Note in favor of Susquehanna Bank (the "Lender") for the principal amount of $400,000.00 (the "Note"), along with a Commercial Security Agreement. The Note sets forth several provisions, including, that the loan is payable upon demand, and that the terms of the Note shall inure to the benefit of the Lender and its successors and assigns. Additionally, the Note contains a Confession of Judgment clause.[1] On January 7, 2009, Dr. D'Arco executed a Commercial Guaranty[2] in favor of the Lender, which also included a Confession of Judgment clause.
>
> [1]The Confession of Judgment clause contained in the Note, provides as follows.
>
> CONFESSION OF JUDGMENT. BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF

---

[1] 15 U.S.C.A. §§ 1691-1691f.

PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THE NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.[2]

[2] The Note, Commercial Security Agreement, and Guaranty are hereafter referred to collectively as the "Loan Documents".

By correspondence dated June 16, 2021, [Truist] informed [D'Arco and the Medical Practice] that it demanded the

[2] The confession of judgment clause contained in the Guaranty was substantially similar, with minor changes, such as replacing "borrower" with "guarantor" and "entire principal balance of this note" with "entire principal balance of this guaranty."

immediate payments of all amounts due and owing under the Loan Documents. Further, [Truist] notified [D'Arco and the Medical Practice] that failure to immediately pay the outstanding amount would result in the Bank filing for judgments under the Note and Guaranty, as well as, that [Truist] would proceed with foreclosure of the collateral secured by the Security Agreement. On August 18, 2021, [Truist] filed separate Complaints in Confession of Judgment against [the Medical Practice], at Docket J-4065-2021, and against [D'Arco], at Docket J-4066-2021. In these complaints, [Truist] alleges that [the Medical Practice] defaulted on the loan when it failed to make payment upon demand of the Note. Additionally, [Truist] alleges that the default remains uncured by the [Medical Practice] or [D'Arco]. [Truist] demands judgment in its favor, and against [the Medical Practice] or [D'Arco], in the total amount of $345,091.83. [Truist] asserts that this total includes $342,090.33 of principal, fees and interest through July 19, 2021; $2,990.00 in attorney's fees and costs through July 19, 2021; and $11.50 in filing fees. [Truist] further requests continuing interest, including post judgment interest at the default rate, and continuing fees and costs. On August 18, 2021, the Prothonotary's Office of Schuylkill County entered separate judgments against [the Medical Practice] and [D'Arco] in the amount of $ 345,091.83.

Trial Court Opinion, filed Mar. 2, 2022, at 1-3 (some footnotes omitted).

The confession of judgment clause in the Note is on the same page as D'Arco's signature, who signed on behalf of the Medical Practice. Complaint in Confession of Judgment, filed Aug. 18, 2021, at Exh. A. The Note further provides that it "shall be binding upon [the Medical Practice], and upon [the Medical Practice's] heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns." *Id.* Similarly, D'Arco's signature appears on the same page of the Guaranty as the

confession of judgment clause and the Guaranty defines "Lender" as "Susquehanna, its successors and assigns." *Id.* at Exh. C.

D'Arco and the Medical Practice filed petitions on October 13, 2021, seeking to strike and/or open the judgments entered by confession, and requesting stay of execution. They argued, among other things, the court should strike the confessed judgment because the guaranty is not enforceable by a successor and the warrant is unenforceable because it was in small print on a pre-printed form. They contended that the court should open the confessed judgment because the consent necessary to permit an alleged successor to the Note to enforce it must be determined by a jury, Truist required D'Arco's spouse to pledge marital assets and otherwise guarantee the loan to refinance the Note in violation of the ECOA and Regulation B, and Truist knowingly and improperly froze, setoff, and attached wages.

In a Declaration attached to a supplemental brief in support of the petitions to strike and/or open, D'Arco stated that sometime in 2021, a representative of Truist contacted him, stating that Truist had been assigned the loan. The representative allegedly informed him that the "loan did not meet Truist's standard loan profile and that the Medical Practice, [D'Arco,] and [his] wife . . . needed to pledge marital assets and [D'Arco's] wife would need to pledge her assets to guarantee the debt of the Medical Practice." Declaration of Daniel J. D'Arco, M.D., filed Jan.31, 2022, at ¶ 8. D'Arco stated he was the sole owner of the Medical Practice, and his wife had no interest in it. *Id.* at ¶ 9. He stated Truist insisted his wife pledge her assets and guarantee

the debt even though the Medical Practice was not in default on the loan. *Id.* at ¶ 10. He further claimed that because he and his wife "refused to pledge [his] wife's assets and she refused to guarantee the Medical Practice's debt, Truist took PPP monies loaned to pay . . . employees from the Medical Practice's bank account[,]" and Truist has not returned the money, "[e]ven though [it] agreed" to do so. *Id.* at ¶ 12.

The trial court issued rules to show cause why D'Arco and the Medical Practice were not entitled to relief. Truist filed answers to the petitions to strike and/or open. The court held oral argument and both parties filed supplemental briefs. In March 2022, the trial court denied the petitions to strike and/or open the confessed judgments. D'Arco and the Medical Practice filed timely notices of appeal.[3]

D'Arco and the Medical Practice raise the following issues:

> 1. Did the trial court err in failing to hold that an Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq.) claim was sufficiently alleged to constitute a meritorious defense to open the confessed judgment?
>
> 2. Did the trial court err in holding that the Note and Guarantee are enforceable by an alleged successor bank when no evidence of such assignment to a successor bank was introduced?
>
> 3. Did the trial court err in holding that the confession of judgment clause was enforceable notwithstanding its lack of descriptiveness, small print on a boiler plate form, failure to require the clause to be separately initialed, and no

---

[3] We consolidated the cases on appeal.

statement of waiver of rights was included within the clause?

4. Did the trial court err in failing to hold that the Bank knowingly and improperly froze, setoff and attached wages and refused to release them?

Appellants' Brs. at 2-3.

Opening and striking a judgment are different remedies subject to different standards. "A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record." **Resolution Trust Corp. v. Copley Qu-Wayne Assoc.**, 683 A.2d 269, 273 (Pa. 1996). "A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." **Id.** The "record" for this purpose is the court record behind the confessed judgment: the complaint in confession of judgment and any exhibits the petitioner attached to it. **Ferrick v. Bianchini**, 69 A.3d 642, 647 (Pa.Super. 2013).

"A petition to open a confessed judgment is an appeal to the equitable powers of the court." **Neducsin v. Caplan**, 121 A.3d 498, 504 (Pa.Super. 2015). The court may open a confessed judgment "if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury." **Id.** at 506 (citation and emphasis omitted). "A meritorious defense is one upon which relief could be afforded if proven at trial." **Id.** (quoting **Ferrick**, 69 A.3d at 647). Rule 2959(e) provides that "[t]he court shall dispose of the rule on petition and answer, and on any testimony, depositions, admissions and other evidence," and "[i]f evidence is produced which in a jury trial would require the issues to

be submitted to the jury the court shall open the judgment." Pa.R.C.P. 2959(e). Therefore, "a judgment of confession will be opened if 'a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury.'" ***Neducsin***, 121 A.3d at 507 (quoting ***Foerst v. Rotkis***, 368 A.2d 805, 807–08 (Pa.Super. 1976)).

We review an order denying a petition to strike a confessed judgment to determine whether the record in existence at the time of the entry of the judgment is sufficient to sustain the judgment. ***First Union Nat'l Bank v. Portside Refrigerated Servs., Inc.***, 827 A.2d 1224, 1227 (Pa.Super. 2003). The denial of a petition to open a confessed judgment is subject to abuse of discretion review. ***Neducsin***, 121 A.3d at 506. Our scope of review is "very narrow," and we will overturn the trial court's decision only if the trial court abused its discretion or committed manifest error. ***Atl. Nat. Trust, LLC v. Stivala Invs., Inc.***, 922 A.2d 919, 925 (Pa.Super. 2007).

D'Arco and the Medical Practice first claim the court erred in failing to hold that the ECOA claim constituted a meritorious defense. They claim the ECOA and its implementing Regulation B prohibit creditors from discriminating against credit applicants based on their marital status. They assert Truist sought a spousal guarantee, and argue Truist treated D'Arco's wife as a "joint applicant" for refinancing even though she did not agree to take on that status. Appellants' Brs. at 7. D'Arco and the Medical Practice point out D'Arco's wife did not own an interest in the Medical Practice or receive any of the loan proceeds. They claim that in D'Arco's Declaration, he explained that during

Truist's credit review process, Truist "included a demand for the pledge of marital assets and spousal guaranty without any analysis of their necessity." *Id.* at 9. They maintain a creditor cannot recover from parties who would not have incurred liability for the debt without the ECOA violation and the creditor is liable to the party whose rights were violated. They thus argue the confessed judgment should be opened based on the ECOA violation.

D'Arco and the Medical Practice liken this case to ***Silverman v. Eastich Multiple Investor Fund, L.P.***, 51 F.3d 28, 33 (3d Cir. 1995). They maintain that D'Arco has been harmed because "the Bank called a longstanding loan that had not been in default simply out of spite because [his] wife would not put her assets or marital assets at risk for the Medical Practice that she owned no interest in." Appellants' Brs. at 11. They argue that courts should not limit the claimants who can seek relief for an ECOA violation.

The ECOA provides that it is unlawful "for any creditor to discriminate against any [credit] applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . marital status." 15 U.S.C.A. § 1691(a)(1). Federal regulations implementing the ECOA provide that a creditor cannot require the signature of an applicant's spouse if the applicant qualifies under the creditor's standards of creditworthiness:

> Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 C.F.R. § 202.7(d)(1).

With the ECOA, "Congress chose to protect women from credit discrimination by requiring that creditors treat all credit applicants—male and female, married and unmarried—in an identical manner." *S.W. Pa. Reg'l Council, Inc. v. Gentile*, 776 A.2d 276, 281 (Pa.Super. 2001) (quoting *Integra Bank v. Freeman*, 839 F.Supp. 326, 328 n.3 (E.D. Pa. 1993)). However, "Congress did not enact the ECOA to permit permissibly bound debtors to escape contractual liability when called upon to perform." *Id.* at 282 (citation omitted). Where a spouse is required to sign as a guarantor, he or she "may assert an ECOA violation as a defense to a state-court confession of judgment." *Id.* "If the defense is successful, the guarantor's obligation is voided, but the underlying debt and any other guarantees are not voided." *Id.*

In *Silverman*, which Appellants cite, the plaintiff was the wife of a partner in a general partnership. 51 F.3d at 29-30. The partnership had borrowed $10 million from a bank. The bank not only required the partners to guaranty the loan, but also required the plaintiff to be a guarantor. The partnership defaulted on the loan, and the bank confessed judgment in state court against the guarantors, including the plaintiff. The plaintiff filed suit in federal court alleging the Bank had violated her rights under the ECOA and sought declaratory and injunctive relief barring execution on the confessed judgment against her. *Id.* at 30. The Third Circuit concluded that although the statute of limitations had expired on the plaintiff's ability to sue under the ECOA, nothing barred her from raising the ECOA defensively, which she had

in effect done by seeking relief in federal court to stop the enforcement of the confessed judgment. *Id.* at 32. The court pointed out that even if the plaintiff obtained the relief she sought, "this would not void the underlying debt obligation nor any other guaranties." *Id.* at 33.

Here, unlike in **Silverman**, it is the credit applicant D'Arco, not his spouse, that attempts to raise an ECOA defense. Even if the credit applicant may raise ECOA as a defense to a judgment of confession action, D'Arco has not sufficiently alleged a ECOA violation to warrant the grant of a petition to open. D'Arco maintains Truist required that his wife became a guarantor of the loan. Such a requirement violates ECOA only where the credit applicant "qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." **See** 12 C.F.R. § 202.7(d)(1); **Gentile**, 776 A.2d at 282 (lender does not violate ECAO where spouses are joint applicants or where credit applicant is not individually creditworthy without spouse's signature). D'Arco makes no claim in his pleadings or his declaration that he qualified under Truist's standards of creditworthiness for the credit requested. Therefore, he failed to produce evidence which would require his alleged ECOA defense to be submitted to a jury and the court did not err in denying his petition to open.[4] **See Neducsin**, 121 A.3d at 507.

_____

[4] The trial court concluded D'Arco and the Medical Practice failed to allege and/or produce sufficient evidence of a meritorious defense based on the ECOA. Trial Ct. Op. at 13. It pointed out that D'Arco's wife was not a signatory to any of the Loan Documents and was not an applicant or guarantor of the

*(Footnote Continued Next Page)*

In his second claim, D'Arco and the Medical Practice argue the court erred in holding the confession of judgment clauses in the Note and Guaranty were enforceable by a successor bank. They argue rigid adherence to the warrant of attorney provisions and other loan documents is required to enter a valid confession of judgment. They point out that a confession of judgment clause must be self-sustaining and argue that where clear consent to the confession of judgment clause is absent, it is not self-sustaining. D'Arco and the Medical Practice argue clear consent was not provided because the Note did not show D'Arco authorized the Note's enforcement by an assignee. They claim the Note "is devoid of any evidence that Dr. D'Arco has had the required clear consent to be liable to a successor or assignee of the original bank necessary to sustain a confession of judgment." Appellants' Brs. at 14. D'Arco and the Medical Practice therefore argue that, because the confession of judgment in the Note was not self-sustaining, it was invalid and unenforceable. *Id.* They contend the Note has a fatal defect on the face of the record and the confession of judgment should be stricken and argue the confession of judgment in the Guaranty is not self-sustaining because of the

_____

loan, and therefore had no obligations under the Loan Documents. The court further noted that Truist had not sought judgment against D'Arco's wife, and therefore she could not raise ECOA as a defense and, even if she could raise the defense, it would not void the underlying debt owed by D'Arco. The trial court noted that "in general 15 U.S.C. § 1691e(a) provides for a separate cause of action for violations of the ECOA." *Id.* at 14 (footnote omitted).

Although our reasoning differs from the trial court, we can affirm the trial court on any basis supported by the certified record. *Commonwealth v. Williams*, 125 A.3d 425, 433 n.8 (Pa.Super. 2015).

defect in the Note. They further argue that, if it is not stricken due to the defect, the court should open the confession of judgment and hold a hearing.[5]

The trial court rejected this claim. It concluded the Note and Guaranty expressly authorize the enforcement by a successor of the Lender, pointing out that on page two of the Note, "in the provision entitled 'SUCCESSOR INTERESTS' it specifically states that '[t]he terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns . . . .'" Trial Ct. Op. at 6 (alteration in original). The court further noted that on page two of the Guaranty, "in a provision entitled 'MISCELLANEOUS PROVISIONS', it expressly states that '[t]he following miscellaneous provisions are part of this Guaranty' . . . Successors and Assigns[--]The terms of this Guaranty shall be binding on Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns." ***Id.*** (alterations in original). The court also pointed out that the Guaranty defines the term "Lender" to include "Susquehanna Bank, its successors, and assigns." ***Id.***

_____

[5] In the issue presented section in their briefs, D'Arco and the Medical Practice argue the Note and Guaranty were unenforceable where no evidence of assignment to the successor bank was introduced. However, they do not present this argument in the argument section of the briefs and therefore waived the claim. ***See Commonwealth v. Rolan***, 964 A.2d 398, 411 (Pa.Super. 2008).

The record supports the trial court's conclusion, and it did not err in denying the petition to strike. The Loan Documents made clear that they could be enforced by the successor or assignee of the Lender, such as Truist.

The trial court also denied the petition to open based on the claim that there was not a clear manifestation of consent to allow a successor trustee to enforce the confession of judgment clauses. *Id.* at 10. The court found D'Arco and the Medical Practice failed to allege or produce evidence to support a meritorious defense, reasoning that the Note and Guaranty expressly authorize the enforcement by a successor. This was not an abuse of discretion.

D'Arco and the Medical Practice next claim the confession of judgment clauses were unenforceable because they lacked descriptiveness, were in small printing on a boilerplate form, were not separately initialed, and had no statement of waiver of rights within the clauses. They further argue the clause was not "properly set apart or identifiable to constitute a valid waiver of due process" and was "not separately and clearly signed or initialed so as to acknowledge the warrant of attorney by the signor, who is the party allegedly agreeing to allow confessing judgment." Appellants' Brs. at 17. Further, they claim that the provision was "set in small hard-to-read font." *Id.* D'Arco and the Medical Practice argue that due to these alleged defects, they were denied due process rights of notice and hearing, and D'Arco did not voluntarily, intelligently, and knowingly waive his rights.

Courts "have noted the need for strict adherence to rules governing confessed judgments." ***Graystone Bank v. Grove Estates, L.P.***, 58 A.3d

1277, 1282 (Pa.Super. 2012) (quoting **Hazer v. Zabala**, 26 A.3d 1166, 1169 (Pa.Super. 2011)). "A warrant of attorney to confess judgment must be self-sustaining and to be self-sustaining the warrant must be in writing and signed by the person to be bound by it. The requisite signature must bear a direct relation to the warrant of attorney and may not be implied." **Id.** (citation omitted) (emphasis removed). In **Graystone Bank**, this Court found that a warrant of attorney "directly related" to the signature where it "appeared conspicuously in all caps on the very bottom of the penultimate page of the agreement and immediately preceded where the executor . . . signed at the top of the following, final page." **Id.** at 1283 (emphasis removed). We concluded that "[e]vidence of this location of a conspicuous cognovit contained within the body of the agreement sufficed to establish that [the executor] effectively signed his name to the warrant of attorney." **Id.**

The trial court found the confession of judgment clauses were valid and self-sustaining because they appear in the Loan Documents in all caps, are at the bottom of the last page of each agreement, and immediately precede the Borrower's and Guarantor's signatures. It pointed out that in the clauses in both Loan Documents, D'Arco waived his rights to notice and a hearing related to a confessed judgment. Trial Ct. Op. at 9. The court found that he nonetheless had opportunities to be heard, including the filing of the petition to open or strike, the rule to show cause issued on Truist, and oral argument. The court concluded there was no fatal defect on the face of the record and D'Arco was not denied his due process rights.

This was not error. The confession of judgment clauses were self-sustaining, as they directly related to the signatures, which were on the same page as, and close to, the confession of judgment clauses, which were in all capital letters. *See Graystone Bank*, 58 A.3d at 1282-83.

In their final issue, D'Arco and the Medical Practice claim the court erred in failing to hold the Bank knowingly and improperly froze, set off and attached wages and refused to release them. They assert that Truist attached $50,000 of PPP loan proceeds intended to be paid as wages to the Medical Practice employees in violation of 42 Pa.C.S.A. § 8127(a).[6] D'Arco claims he informed Truist that the funds were PPP loan proceeds to be paid to employees and that Truist agreed to restore the funds but did not. He therefore claims the confessed judgments should have been opened because the money should be released.

The trial court concluded D'Arco and the Medical Practice failed to allege and/or produce evidence of a meritorious defense. It reasoned that whether Truist improperly froze, set off, and/or attached PPP loan proceeds and payroll "is a separate and distinct issue from the issue at hand, which is whether the confessed judgments should be opened." Trial Ct. Op. at 15.

---

[6] 42 Pa.C.S.A. § 8127(a) provides that, with certain exceptions, "[t]he wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process."

The court did not abuse its discretion. Whether certain funds should have been preserved does not provide a defense to Truist's ability to confess judgment.

Orders affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/24/2023