J-A25032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PREF WHITE BUILDING, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COGITO FIRST CRACK, LLC, | : | |
| BENJAMIN LESHER, S. RALPH GATTI, | : | |
| AND MARKO BRKICH | : | No. 290 EDA 2024 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered January 11, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 230803038

BEFORE: OLSON, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED AUGUST 15, 2025**

Cogito First Crack, LLC ("Cogito"), Benjamin Lesher ("Lesher"), S. Ralph Gatti ("Gatti"), and Marko Brkich ("Brkich") (collectively, "Appellants")[1] appeal from the order denying their petitions to strike and/or open a confessed judgment in favor of PREF White Building, LLC ("PREF"). We affirm.

The factual and procedural history of this appeal is as follows. In August 2018, Cogito entered into a lease ("Lease") with PREF's predecessor-in-

_____

[1] Although the notice of appeal and Appellants' brief list Cogito as a party in this appeal, we note that Appellants' Pa.R.A.P. 1925(b) statement did not preserve any issues regarding the confessed judgment against Cogito. *See* Pa.R.A.P. 1925(b)(4)(vii). Similarly, Appellants' brief focuses on the confessed judgment against Lesher, Gatti, and Brkich as individuals, without addressing the confessed judgment against Cogito. *See* Pa.R.A.P. 2119(a); *Jarl Investments, L.P. v. Fleck*, 937 A.2d 1113, 1121 (Pa. Super. 2007). Therefore, we deem any challenge to the trial court's refusal to strike or open the confessed judgment against Cogito waived.

interest ("Landlord") to operate a coffee shop in a condominium ("Premises").

*See* Compl. in Confession of J. (hereinafter, cited as "Compl."), 8/29/23, Ex.

A.

The Lease required a guaranty, which Lesher, Gatti, and Brkich signed.[2]

The guaranty contained the following relevant provisions:

> This **LEASE GUARANTY** (hereinafter referred to as the "Guaranty") is made by MARKO BRKICH, . . . S. RALPH GATTI, . . . and BENJAMIN J. LESHER . . . (each a "Guarantor" and collectively "Guarantors"). Any capitalized term used but not defined herein shall have the meaning ascribed to that term in the Lease (as defined herein).
>
> * * * *
>
> **NOW, THEREFORE**, for and in consideration of leasing the Premises by Landlord to the Tenant [(*i.e.*, Cogito)], for value received and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged by the Guarantor, intending to be legally bound:
>
> 1. The Guarantor hereby absolutely, unconditionally and irrevocably guarantees at any time to Landlord: (1) the full and prompt payment, when due, whether at stated maturity, and at all times thereafter, of any and all debts, liabilities, and obligations of the Tenant provided for in the Lease . . ..
>
> Notwithstanding anything to the contrary in this Guaranty, Guarantor's liability . . . shall not exceed the monetary sum of $150,000.00 (the "**Capped Amount**"). Provided that no Event of Default under the Lease has occurred and is continuing as of the then applicable Scheduled Reduction Date (as hereinafter defined), on each of the first five (5) anniversaries of the Rent Commencement Date during the Term (each such anniversary being referred to as the "Scheduled Reduction Date"), the Capped Amount shall decrease by the sum of $15,000.00 so that the

---

[2] The record indicates Brkich signed the Lease as Cogito's CEO. However, the record does not describe what positions or interests Lesher and Gatti have in Cogito.

- 2 -

amount of the Capped Amount for the remaining Lease Years of the Term of the Lease shall be $75,000.00 [(hereinafter, the "Reduction Schedule")]. . . .

* * * *

5. If there are more than one (1) entities and/or individuals comprising the "Guarantors" hereunder, then the obligations of each Guarantor hereunder shall be joint and several [(hereinafter, "joint and several liability").] This Guaranty shall inure to . . . Landlord's . . . successors and assigns . . ..

* * * *

**10. WARRANT OF ATTORNEY AUTHORIZING JUDGMENTS BY CONFESSION.**

**EACH GUARANTOR DOES HEREBY EMPOWER ANY ATTORNEY OF ANY COURT OF RECORD WITHIN THE COMMONWEALTH OF PENNSYLVANIA TO APPEAR FOR SUCH GUARANTOR, AND WITH OR WITHOUT ONE OR MORE COMPLAINTS FILED, CONFESS A JUDGMENT OR JUDGMENTS AGAINST SUCH GUARANTOR IN ANY COURT OF RECORD WITHIN THE COMMONWEALTH OF PENNSYLVANIA, AT ANY TIME AFTER THE DATE HEREOF, IN FAVOR OF LANDLORD OR ITS SUCCESSORS OR ASSIGNS FOR THE TOTAL AMOUNT OF THE OBLIGATIONS OF SUCH GUARANTOR THEN DUE UNDER THIS GUARANTY, TOGETHER WITH COSTS OF SUIT AND REASONABLE ATTORNEY'S FEES, AND EACH GUARANTOR HEREBY FOREVER WAIVES AND RELEASES ANY AND ALL ERRORS IN SAID PROCEEDINGS AND WAIVES STAY OF EXECUTION AND STAY, CONTINUANCE OR ADJOURNMENT OF SALE ON EXECUTION, THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST ANY GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, AND MAY BE EXERCISED FROM TIME TO TIME AND AS OFTEN AS LENDER OR ANY OF ITS SUCCESSORS OR ASSIGNS SHALL DEEM NECESSARY OR DESIRABLE. . . .**

*Id*. Ex. B (hereinafter "Guaranty").

PREF acquired the Premises in 2019 from landlord. On August 29, 2023, PREF commenced the underlying confession of judgment action. In its complaint, PREF asserted Cogito had defaulted on the Lease and claimed:

19. As a result of the [d]efaults more fully described above, the following amounts are immediately due and payable to PREF by the Guarantors [(*i.e.*, Lesher, Gatti, and Brkich)] for unpaid rent, interest, costs, and fees:

| | |
|---|---|
| Unpaid Rent as of June 2023 | $331,369.49 |
| Late Fees from May 2023 – July 2023 (5% on Unpaid Rent) | $16,568.47 |
| Interest from May 23, 2023 to July 31, 2023 (Prime Rate + 5%) | $66,184.30 |
| Attorney's Fees as of June 2023 | $10,000.00 |
| **TOTAL OBLIGATIONS** | $424,122.26 |

*Id*. at ¶ 19. PREF attached to the complaint copies of the Lease, the Guaranty, and two notices of default it had sent to Lesher, Gatti, and Brkich, one dated May 2021, the other dated May 2023. *See id*. Exs. A-D.[3]

On October 2, 2023, Lesher and Gatti filed a petition to open and/or strike, and, that same day, Cogito and Brkich filed a separate petition to open and/or strike. Appellants and PREF filed a series of memorandums of law, answers, and replies which, in relevant part, raised disputes over the

_____

[3] The May 2021 notice stated that Cogito was in $122,257.57 arrears for minimum rent and additional rent under the Lease, and the May 2023 notice alleged Cogito owed $310,452.95. *See* Compl., 8/29/23, Exs. C-D.

- 4 -

interpretation and application of the Guaranty's Capped Amount and Reduction Schedule provisions; the aggregation of Lesher, Gatti, and Brkich's total obligations under the Guaranty; the adequacy of the documentation attached to the complaint; and other factual disputes over PREF's averments in the complaint, including the amount of Cogito's default of the Lease. *See* Lesher and Gatti's Pet. to Strike or Open, 10/2/23, at ¶¶ 10, 24-25. Appellants also asserted Cogito's negotiations with the original landlord made clear that the Guaranty provided landlord with a total, collective, guaranty of $150,000, which would decrease to $75,000 over the first five years of the Lease. *See* Lesher & Gatti's Reply Br. in Supp. of Pet. to Strike or Open, 10/27/23, at 2; *see also* Cogito and Brkich's Pet. to Strike or Open, 10/2/23, at ¶¶ 4-5.

PREF responded that the language of the Guaranty was clear: Lesher, Gatti, and Brkich each guaranteed Cogito's performance under the Lease and each was subject to a maximum Capped Amount of $150,000, which could then be aggregated to $450,000 because their liability was joint and several. *See* PREF's Mem. of Law in Opp'n to Lesher and Gatti's Pet. to Strike or Open, 10/23/23, at 6; PREF's Mem. of Law in Opp'n to Brkich's and Cogito's Pet. to Strike or Open, 10/23/23, at 8. Additionally, PREF claimed Appellants failed to present any factual support for their claims for a reduction of the Capped Amount under the Reduction Schedule. *See* PREF's Mem. of Law in Opp'n to Brkich's and Cogito's Pet. to Strike or Open, 10/23/23, at 8.

On December 13, 2023, the trial court denied Appellants' petitions to strike and/or open the confessed judgment without a hearing. Appellants

timely appealed,[4] and they and the trial court complied with Pa.R.A.P. 1925(b).

Appellants raise the following issues for review:

A. Whether the lower court erred in denying the petitions to strike confessed judgment, as there is a defect on the face of the confessed judgment?

B. Whether the lower court erred in denying the petitions to open confessed judgment where Appellants timely filed their petitions, had a meritorious defense, and produced sufficient evidence to require submission of the case to a jury?

Appellants' Br. at 2-3 (some capitalization omitted).

At the outset, we note that "[a] petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable." *Neducsin v. Caplan*, 121 A.3d 498, 504 (Pa. Super. 2015) (internal citation omitted). A petition to strike a judgment is a common law proceeding that focuses on defects or irregularities in the record that affect the validity of the judgment and entitles the petitioner to relief as a matter of law. *See id*. While a petition to strike operates as a demurrer to the record of the confessed judgment, a petition to open appeals to the equitable powers of the trial court. *See id*.

Generally, a petitioner who challenges the amount of a confessed judgment must do so in a petition to open rather than a petition to strike. *See Germantown Sav. Bank v. Talacki*, 657 A.2d 1285, 1291 (Pa. Super.

_____

[4] Appellants filed a joint motion for reconsideration, which the trial court denied as moot after Appellants took this appeal.

1995). This is so because disputes over the amounts of the confessed judgment concern factual averments in the complaint or require consideration of matters outside the record of the confessed judgment. *See Davis v. Woxall Hotel, Inc.*, 577 A.2d 636, 638 (Pa. Super. 1990); *accord SDO Fund II D32, LLC v. Donahue*, 234 A.3d 738, 742 (Pa. Super. 2020) (noting that "[i]f the truth of the factual averments contained in the complaint in confession of judgment and attached exhibits are disputed, then the remedy is by proceeding to open the judgment, not to strike it"). A court will not strike the judgment unless the amount of the confessed judgment includes items not authorized by the warrant to confess judgment or the amount is grossly excessive based on the face of the record of the confessed judgment. *See Davis*, 577 A.2d at 638; *accord Centric Bank v. Sciore*, 263 A.3d 31, 45 (Pa. Super. 2021).

Because the issues in this appeal involve the interpretation and application of the provisions of the Guaranty regarding the Capped Amount and the Reduction Schedule, we also note the following principles:

> [C]ontract construction and interpretation is generally a question of law for the court to decide. A contract's language is unambiguous if it can be determined without any other guide than knowledge of the simple facts on which its meaning depends. When the contract is clear and unambiguous, the meaning of the contract is ascertained from the writing alone. . . .
>
> Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court. The legal effect or enforceability of a contact provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard.

*Pops PCE TT, LP v. R & R Rest. Grp., LLC.*, 208 A.3d 79, 87 (Pa. Super. 2019) (internal citations, quotation marks, and indentations omitted). Mindful of these principles, we address Appellants' issues in this appeal.

**The Trial Court's Denial of Appellant's Petitions to Strike**

In their first issue, Appellants claim the trial court erred in refusing to strike the confessed judgment. In their principal argument, they assert the plain language of the Guaranty did not support PREF's entry of confessed judgments against Lesher, Gatti, and Brkich over $150,000. *See id*. at 10. They claim the trial court erred when concluding the Capped Amount applied to them individually and not collectively. *See id*. Appellants emphasize the Capped Amount provision limited their liability "'[n]otwithstanding anything to the contrary in th[e] Guaranty.'" *See id*. They conclude that their total collective liability was a maximum of $150,000 despite the Guaranty's provisions they agreed to pay all of Cogito's obligations and their liability for Cogito's obligations was joint and several. *Id*.

The trial court addressed Appellants' principal claim concerning the Capped Amount provision and determined the Capped Amount applied to Lesher, Gatti, and Brkich individually, not collectively. The court reasoned the Guaranty defined Lesher, Gatti, and Brkich as "each a 'Guarantor' and collectively 'Guarantors[;]'" the Capped Amount provision referred to the singular possessive "Guarantor***'s***" maximum liability for Cogito's default; and the Guaranty's warrant of attorney permitted PREF to confess judgment against "each Guarantor" (again, in the singular) for the total amount of the

obligations of such guarantor under the Guaranty. **See** Trial Ct. Op., 5/28/24, at 6. The trial court explained that construing the Capped Amount and the confession of judgment provisions as applying collectively to all "Guarantors" was unreasonable where the Guaranty expressly defined and distinguished between the singular use of the term "Guarantor" and collective uses of the plural term "Guarantors." **See id**. at 6-7. The court thus determined that Lesher, Gatti, and Brkich were each liable up to $150,000, and the amount involved in PREF's complaint fell within the total $450,000 limit authorized by the Guaranty. **See id**. at 4, 7.

Following our review, we discern no error in the trial court's rejection of Appellants' claim that the Capped Amount provision should have limited their total collective liability to a maximum of $150,000. First, there is no dispute Lesher, Gatti, and Brkich each guaranteed the prompt satisfaction of Cogito's obligations under the Lease and payment of any and all debts. **See** Guaranty at § 1, ¶ 1 (stating, in relevant part, "The Guarantor hereby absolutely, unconditionally and irrevocably guarantees . . . the full and prompt payment, when due . . . all debts, liabilities, and obligations of [Cogito] provided for in the Lease . . ."). As noted by the trial court, the Guaranty specifically defined its usages of the term "Guarantor" in the singular and the term "Guarantors" as a collective. **See id**. at Preamble (stating the Guaranty "is made by MARKO BRKICH, . . . S. RALPH GATTI, . . . and BENJAMIN J. LESHER . . . (each a 'Guarantor' and collectively 'Guarantors'")). The Capped Amount provision, in turn, limited the liability of the Guarantor **in the singular**. **See id**. at § 1,

¶ 2 (stating, "Notwithstanding anything to the contrary in this Guaranty, Guarantor**'s** liability . . . shall not exceed the monetary sum of $150,000.00") (emphasis added). Thus, we agree with the trial court that Lesher, Gatti, and Brkich, each being a "Guarantor," were each subject to a $150,000 maximum Capped Amount. *See id*. at Preamble & § 1; Trial Ct. Op., 5/28/24, at 6-7. As suggested by the trial court, had the Guaranty contemplated applying the $150,000 Capped Amount to Lesher, Gatti, and Brkich collectively, the Guaranty could have done so specified by using the specifically defined plural term "Guarantors." *See* Trial Ct. Op., 5/28/24, at 6-7 (noting "It is not reasonable to interpret 'guarantor' as a plural and collective term when the lease guaranty's first paragraph expressly provides otherwise"); *cf. Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 244 (Pa. 2024) (noting that where a contract is clear, a court cannot alter the terms of the contract under the guise of construction).

For these reasons, we agree with the trial court that Appellants' attempt to construe the Guaranty as limiting Lesher, Gatti, and Brkich's total collective liability to $150,000 contradicted the plain terms of the Guaranty. Accordingly, Appellants' principal argument—that the Capped Amount provision of the Guaranty did not support the entry of the confessed judgment against Lesher, Gatti, and Brkich in excess of $150,000—merits no relief.[5]

_____

[5] PREF claims that Brkich did not preserve an argument that he was entitled to strike the confessed judgment based on an interpretation of the Guaranty's
*(Footnote Continued Next Page)*

Appellants raise two additional arguments concerning the denial of their petitions to strike the confessed judgment. First, they claim the trial court erred in denying their petitions to strike because PREF failed to explain how it calculated the rent owed by Cogito, interest, late fees, and attorney's fees. *See* Appellants' Br. at 8. Appellants assert PREF "should have provided a ledger showing its calculations of the amounts owed and an itemization of which months of rent it claimed were unpaid." *Id*. Second, Appellants refer to the Reduction Schedule and assert PREF failed to establish whether the Lesher, Gatti, and Brkich's "maximum liability was $75,000, $150,000, or some other number in between." *Id*.

The trial court, when explaining its denial of the petitions to strike, did not address these additional claims concerning the alleged defects in the

---

provisions concerning the Capped Amount and Reduction Schedule. *See* PREF's Br. at 7-8 (citing Pa.R.A.P. 302(a)). PREF correctly notes Brkich and Cogito's separate petition to strike and/or open the confessed judgment focused its legal arguments on two issues: (1) the trial court should strike the confessed judgment because the confessed judgment provision was unenforceable and (2) the confessed judgment should be opened because the alleged amount confessed by Brkich exceeded the "amount capitated by" the guaranty. Cogito and Brkich's Mem. of Law in Supp. of Pet. to Strike or Open, 10/2/23, at 19, 22-23, 25. Additionally, unlike Lesher and Gatti, who insisted the Guaranty capped their total collective liability at a maximum of $150,000, with possible reductions to $135,000 or $75,000, Cogito and Brkich suggested the reduced maximum guaranty was $270,000. *See id*. at 25. However, in light of our disposition of this first issue, which Lesher and Gatti preserved in the trial court, we need not consider whether Brkich separately waived this claim.

original record. However, a review of the record reveals Appellants did not adequately raise these issues in their petitions to strike.

With respect to the adequacy of documentation attached to the complaint, Appellants' petitions initially claimed the lack of supporting documentation as part of the summaries of the facts and procedural history. *See* Lesher and Gatti's Pet. to Strike or Open, 10/2/23, at ¶¶ 4, 8 (asserting inadequate documentation); Cogito and Brkich's Pet. to Strike or Open, 10/2/23, at ¶¶ 29-31 (noting PREF's notices of default did not specify which months of rent apply to the arrears). However, Appellants did not develop any meaningful argument, or even offer a legal conclusion, that the absence of supporting documentation constituted a separate basis to strike the confessed judgment. *See* Lesher and Gatti's Pet. to Strike or Open, 10/2/23, at ¶ 10 (petitioning the trial court to strike the confessed judgment because "the plain language of the Lease Guaranty, S. Ralph Gatti and Benjamin Lesher only collectively guaranteed up to $150,000 as of 2018, with the maximum guaranteed amount decreasing by $15,000 annually"); Cogito and Brkich's Pet. to Strike or Open, 10/2/23, at ¶¶ 62-65 (seeking to strike the confessed judgment because the Guaranty's confession of judgment provision was not enforceable). Therefore, we conclude Appellants waived this argument because their petitions did not properly identify the absence of adequate documentation as a basis to strike the confessed judgment. *See* Pa.R.A.P. 302(a). Additionally, Appellants' Rule 1925(b) statement did not fairly suggest an error concerning the trial court's refusal to strike the confessed

- 12 -

judgment due to the alleged inadequacy of the documentation supporting PREF's complaint. **See** Pa.R.A.P. 1925(b) Statement;[6] **see also** Pa.R.A.P. 1925(b)(4)(ii), (vii). Accordingly, we do not fault the trial court for failing to address this claim, nor will we address Appellants' contention that the trial court erred in denying their petitions to strike based on the inadequacy of the documentation supporting PREF's complaint.[7]

With respect to Appellants' claim the trial court should have stricken the confessed judgment because of possible reductions under the Capped Amount, we conclude that this claim is waived for a different reason. Mere issue spotting without analysis or discussion of pertinent legal citation to

---

[6] Appellants' Rule 1925(b) statement challenged the denial of their petitions to strike the confessed judgment as follows:

> Based on the plain language of the . . . Guaranty, as well as the prior drafts of the same and original letter of intent that were submitted with the petitions, . . . Brkich, . . . Gatti, and . . . Lesher only guaranteed up to $150,000 each as of 2018, with the maximum guaranteed amount decreasing by $15,000 annually. Based on the plain language of the Lease Guaranty, the confession of judgment is therefore defective on its face. Accordingly, Landlord has improperly confessed judgment for rights under the Lease Guaranty and the confessed judgment must be stricken.

Pa.R.A.P. 1925(b) Statement, 1/17/24, at ¶ 1.

[7] Were we to address this claim, however, we would note that this Court rejected a similar argument in **Davis**. **See Davis**, 577 A.2d at 638 (concluding that former Rule 2952(f), subsequently renumbered as Rule 2952(7), did not require the party seeking confession of judgment pursuant to the terms of a commercial lease to itemize the monthly rentals represented in the judgment[,]" and noting, "[t]o hold otherwise would serve to shift the burden to the plaintiff . . .").

support an assertion precludes our appellate review of a matter. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014); *see also Irwin Union Nat'l Bank and Trust Co. v. Famous and Famous and ATL Ventures*, 4 A.3d 1099, 1103 (Pa. Super. 2010) (holding that this Court will not act as counsel and will not develop arguments on behalf of an appellant). Here, Appellants offer only boilerplate assertions that the trial court erred when denying their petition to strike the confessed judgment due to possible operation of the Reduction Schedule. *See* Appellants' Br. at 10 (arguing, "Further, [PREF] did not provide any information regarding the number of years of timely payment, which would decrease [Lesher, Gatti, and Brkich's] maximum liability by $15,000 each year. Accordingly, Landlord did not establish whether the maximum liability was $75,000, $150,000, or some other number in between"). Even if we were to address this claim, we note that Appellants rely on the possible existence of facts outside the original record of the confessed judgment to challenge factual averments in PREF's complaint. Therefore, Appellants' claim concerning possible applications of the Reduction Schedule are not proper matters in a petition to strike, but, instead, should be addressed in a petition to open. *See Davis*, 577 A.2d at 638; *Donahue*, 234 A.3d at 742.

To summarize our disposition of Appellants' first issue, we discern no error in the trial court's decision to deny Appellants' petitions to strike based on its conclusion that the Guaranty imposed individual liability on Lesher, Gatti, and Brkich of up to $150,000, which, could, in turn, be aggregated up

to $450,000. Appellants' remaining claims concerning the denial of their petitions to strike are waived and/or meritless. Accordingly, we affirm the trial court's denial of Appellants' petitions to strike.

**The Trial Court's Denial of Appellants' Petitions to Open**

In their second issue, Appellants assert the trial court abused its discretion when refusing to open the confessed judgment. This Court reviews an order denying a petition to open a confessed judgment for an abuse of discretion. **See Neducsin**, 121 A.3d at 506. It is well settled that "[t]he trial court may open a confessed judgment if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury." **Id**. (internal citation omitted).

In the present case, the trial court concluded that Appellants failed to meet any of the three prongs to open the confessed judgment. However, we focus our review on the second two prongs: the allegation of a meritorious defense and the production of sufficient evidence to require submission of the case to a jury.[8]

---

[8] We note that the trial court determined that Appellants filed their October 2, 2023 petitions to strike and/or open the confessed judgments four days after the thirtieth day on which PREF provided notice of the confessed judgment on August 29, 2023. The trial court further determined Appellants offered no compelling reason for this delay.

The Pennsylvania Rules of Civil Procedure require the filing of a petition to strike and/or open within thirty days after service of written notices and states a petition will be denied as untimely if there were no compelling reasons for a delay. **See** Pa.R.Civ.P. 2959(a)(3) & 1996 cmt.; **see also** Pa.R.Civ.P. 2958.1.
*(Footnote Continued Next Page)*

- 15 -

As this Court has stated:

A meritorious defense is one upon which relief could be afforded if proven at trial.

> Pa.R.Civ.P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment. Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while rejecting contrary evidence of the non-moving party. The petitioner need not produce evidence proving that if the judgment is opened, the petitioner will prevail. Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom.

In other words, a judgment of confession will be opened if a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury. The standard of sufficiency here is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations. The trial court can make this

_____

Where the party seeking the confessed judgment serves written notices by mail, "[s]ervice is complete upon delivery of the mail." Pa.R.Civ.P. 403; **see also** Pa.R.Civ.P. 2958.1(a), (b)(1)(ii). Here, while PREF filed its complaint in confession of judgment with Rule 2958.1 notices on August 29, 2023, PREF subsequently filed an affidavit of service indicating that it mailed notices on August 30, 2023, and delivery did not occur until August 31, 2023, at the earliest. **See** Aff. of Service, 12/15/23, at 1. The thirty-day window for filing a facially timely petition to open and/or strike thus ended on September 30, 2023, at the earliest, which was a Saturday. October 2, 2023, when Appellants filed their petitions to open and/or strike the confessed judgment, was the next business day. **See** 1 Pa.C.S.A. § 1908. As neither Appellants nor PREF dispute whether the filing of the petitions to strike and/or open occurred within thirty days after PREF's service of written notice, we will not consider further the trial court's determination that the petitions were untimely filed without compelling delay.

decision as a matter of law when the defense presented is without adequate substance, because contract construction and interpretation is generally a question of law for the court to decide.

*Neducsin*, 121 A.3d at 506-07 (citations and internal quotation marks omitted). It is the petitioner's burden to "offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question." *Stahl Oil Co., Inc v. Helsel*, 860 A.2d 508, 512 (Pa. Super. 2004) (internal citation omitted).

Appellants assert they raised two meritorious defenses to the confessed judgment. *See* Appellants' Br. at 13. First, they note Lesher and Gatti's petitions pleaded that the amount of Cogito's default was "'inflated and inaccurate[,]'" but the trial court ignored that averment. *Id*. at 14.[9] Second, they contend the Reduction Schedule should have reduced their collective liability to between $75,000 and $135,000. *See id*. at 14-16. Appellants argue the trial court erred in its interpretation of the Reduction Schedule provision when holding that any default in the first five years of the Lease cancelled a reduction earned in a prior year. *See id*. at 16.[10]

_____

[9] Appellants amplify this argument in their reply brief by asserting the trial court ignored Lesher and Gatti's verified statements in their petition to open and or strike that "[b]ased on representations of . . . Brkich (the managing member of Cogito First Crack, LLC), . . . Lesher and . . . Gatti believe that the total amount in default significantly less than that represented by [PREF]— less than a third of the amount claimed." Lesher and Gatti's Pet. to Strike or Open, 10/2/23, at ¶ 5; Appellants' Reply Br. at 5.

[10] Appellants refer an additional claim in their reply brief, namely, that they sufficiently alleged that the Guaranty contained a scrivener's error. *See* Appellants' Reply Br. at 5. However, their principal brief did not raise or fairly
*(Footnote Continued Next Page)*

- 17 -

When addressing Appellants' petitions to open the confessed judgment, the trial court framed the claims as an attempt to limit Lesher, Gatti, and Brkich's liability based on the Capped Amount and Reduction Schedule. *See* Trial Ct. Op., 5/28/24, at 9-11. The trial court initially determined the plain language of the Guaranty defeated any claims that the Capped Amount applied collectively to Lesher, Gatti, and Brkich, and the only evidence presented to support such a claim consisted of negotiating documents between Cogito and the original landlord, which constituted impermissible parol evidence where the language of the Guaranty was clear. *See id*. at 10, 12-14. The trial court further reasoned none of the annual $15,000 decreases called for in the Reduction Schedule applied because PREF's notices of default established Cogito had defaulted, and failed to cure the default, within the first five years of the Lease. *See id*. at 11. The trial court thus concluded Lesher, Gatti, and Brkich were not entitled to any reduction of the Capped Amount, but the court did not otherwise consider challenges to the amount of Cogito's default and/or the timing of the default.

_____

suggest this issue. *See* Appellants' Br. at 14-15 (asserting that the Guaranty's plain language supported their claim the Capped Amount applied collectively, and to the extent ambiguity existed, they had evidence the Capped Amount was intended to apply collectively). An appellant is prohibited from using a reply brief as a means of raising new issues or arguing issues raised but inadequately developed, in the appellant's original brief. *See Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 969 n.20 (Pa. Super. 2023). Accordingly, we conclude Appellants waived their scrivener's error claim.

Following our review, we conclude Appellants' arguments merit no relief. Initially, for the reasons set forth above, we agree with the trial court that the plain language of the Guaranty did not support Lesher, Gatti, and Brkich's claim that the Capped Amount applied collectively. *See* Trial Ct. Op. 5/28/24, at 10. With respect to the operation of the Reduction Schedule, we affirm for different reasons than stated by the trial court. *Cf. Stoltzfus v. Green Line Labs, LLC*, 303 A.3d 447, 455 n.3 (Pa. Super. 2023) (stating this Court may affirm the trial court on any basis). Here, Appellants' petitions to strike and/or open challenged the amount of Cogito's default and the operation of the Reduction Schedule as a basis to open the confessed judgments. Specifically, Lesher and Gatti's petition contained the following challenges:

> 4. [PREF] did not attach to the [c]omplaint . . . any documentation establishing that Cogito was in default under the Lease, such as a statement of account or balance sheet.
>
> 5. Based on representations of . . . Brkich (the managing member of Cogito . . . ), . . . Lesher and . . . Gatti believe that the total amount in default significantly less than that represented by Landlord—less than a third of the amount claimed.
>
> 6. Additionally, it is wholly inaccurate that . . . Gatti and . . . Lesher agreed to guarantee the full and prompt payment of all debts of liabilities of Cogito.
>
> 7. To the contrary, the . . . Guaranty attached as Exhibit B to the [c]omplaint clearly indicated that "Guarantor's liability for the indebtedness and the Obligations shall not exceed the monetary sum of $150,000" and the maximum exposure would decrease each year by $15,000. . . .
>
> * * * *
>
> 24. . . . Gatti and . . . Lesher also allege two meritorious defenses: (1) that the amount in default claimed by Landlord is inflated and inaccurate, and (2) that the Lease Guaranty has an express

- 19 -

limitation on the amount they guaranteed, which is somewhere in the range of $75,000 to $135,000 depending on the history of Tenant's payments as will be revealed in discovery.

Lesher and Gatti's Pet. to Strike or Open, 10/2/23, at ¶¶ 4-7, 24.

In their petition, Cogito and Brkich asserted:

37. Regardless of the [Cogito]'s argument, the [c]onfession of [j]udgment must be opened as to . . . Brkich because the confessed amount substantially exceeds the capitated amount set forth by the Guaranty.

* * * *

77. In this matter, [PREF] confesses judgment against . . . Brkich for an amount well in excess of One Hundred and Fifty Thousand Dollars ($150,000.00).

78. If enforceable against . . . Brkich, the Confessed Amount against any individual [d]efendant cannot exceed the amount capitated by the . . . Guaranty.

79. Presently, the amount confessed against . . . Brkich is Four Hundred and Twenty Four Thousand One Hundred and Twenty Two Dollars and Twenty Six Cents ($424,122.26), which exceeds the maximum guaranty of approximately Two Hundred and Seventy Thousand Dollars ($270,000.00).

Cogito and Brkich's Pet. to Strike or Open, 10/2/23, at ¶¶ 37, 77-79. PREF generally denied all of the above-stated allegations except for an admission that it sought confession of judgment for $424,122.26.

Appellants' averments, when read in a light most favorable to them, alleged only the possibility that Cogito had paid more under the Lease than accounted for in PREF's complaint for a confessed judgment of $424,122.26, and that Cogito may not have been in default on the first (or possibly second, third, or fourth anniversary of the Lease) as would entitle Lesher, Gatti, and

Brkich to a reduced Capped Amount under the Reduction Schedule. Although Appellants alleged meritorious defenses, their pleadings alleged no specific facts concerning Cogito's payments under the Lease, only unsupported beliefs. *See* Lesher and Gatti's Pet. to Strike or Open, 10/2/23, at ¶¶ 5, 24. Tellingly, while Lesher and Gatti asserted Brkich represented to them the amount of Cogito's default was substantially less than PREF claimed, *see id*., Brkich and Cogito offered no factual averments to support that allegation.

Furthermore, Appellants presented no actual evidence of any payments made by Cogito pursuant to the Lease, or that it had satisfied any condition for the application of the Reduction Schedule, in particular, the non-occurrence, or a cure, of a default, by the first anniversary of payments due under the Lease. Appellants, therefore, did not meet their burden of producing sufficient evidence which in a jury trial would require the issues of Cogito's payments under the Lease and/or whether Cogito had reached any milestone under the Reduction Schedule to be submitted to the jury. Thus, we affirm the trial court's decision to deny Appellants' petitions to open the confessed judgment.[11]

_____

[11] We acknowledge that this Court has afforded a petitioner opportunities to present evidence supporting a meritorious defense where, as here, the trial court did not hold a hearing on the underlying petition to open. *See Gur v. Nadav*, 178 A.3d 851, 860 (Pa. Super. 2018) (concluding the trial court erred in denying a petition to open where the petitioner alleged the amount of a loan had been offset by value of merchandise seized by the lender, where the lender admitted to seizing the merchandise and only disputed whether the seizure was related to the loan). However, in this case, where Appellants
*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/15/2025

---

offered no factual allegations or any relevant evidence of Cogito's payments under the Lease, we conclude Appellants' argument improperly seeks to shift to PREF the burden of proving the amount of Cogito's default and decline to remand for a hearing. *Cf. Neducsin*, 121 A.3d at 506-07; *Stahl Oil Co., Inc v. Helsel*, 860 A.2d 508, 512.

Because we conclude that Appellants failed to meet the third prong of a petition to open, we need not consider the trial court's interpretation of the Reduction Schedule as precluding any reduction to the Capped Amount if Cogito breached at any time during the first five years of the Lease.